In the Matter of the Application of PETER J. GARVEY, Respondent, to Strike from the List of Registry of Voters of the Second Election District of the Thirteeth Assembly District in the City of New York, the Names of JOHN NEILSON BARRY et al., Appellants.

1. ELECTIONS — RESIDENCE OF VOTER — SEMINARY STUDENTS.   Under the provision of the Constitution of the state of New York (Art. 2, § 3), to the effect that for the purpose of voting a residence cannot be gained or lost by reason of presence or absence while a student of any seminary of learning, it is essential, to entitle a student whose legal residence has been previously elsewhere, to vote in the election district in which the seminary is situated, that the intent to change his legal residence be manifested by acts which are independent of his presence as a student in the new locality.

2. THEOLOGICAL STUDENTS — RESIDENCE.   The rule requiring proof of change of legal residence by acts independent of the presence of the student in the seminary, *held*, to be controlling in the determination of the right to registration, in the election district in which the seminary is situated, of certain students of the General Theological Seminary of the Episcopal Church, in New York city, living in one of the seminary buildings.

Reported below, 84 Hun, 611.

(Argued June 3, 1895; decided October 8, 1895.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made February 28, 1895, which affirmed an order of the Special Term striking from the registry list of voters in the city of New York the names, among others, of the appellants, John Neilson Barry, Henry Mesier, George Gunnell, Jr., and Thomas Henry Yardley.

The facts, so far as material, are stated in the opinion.

*George F. Canfield* and *William H. Arnoux* for appellants.   Under the Constitution of this state, the appellants were entitled to vote in the second election district of the thirteenth assembly district in New York county, having been inhabitants of the state of New York and residents in said county and election district for the periods required by the Constitution.   (Const. N. Y. art. 2, § 1 ; Jacobs' Law of Domi-

cile, §§ 79–84, 91–93, 100, 133, 185–187; *Putnam* v. *John-scn*, 10 Mass. 488; *Frost* v. *Brisbin*, 19 Wend. 11; *Mayor, etc.* v. *Genet*, 4 Hun, 489; *Dupuy* v. *Wurtz*, 53 N. Y. 556.) The appellants were not, under section 3 of article 2 of the Constitution, prohibited from exercising the right of suffrage which was vested in them by section 1 of the said article. (Const. N. Y. art. 2, § 3; *In re Ward*, 29 Abb. [N. C.] 187; *Ames* v. *Duryea*, 6 Lans. 155; *Berry* v. *Wilcox*, 62 N. W. Rep. 249; *Silvey* v. *Lindsay*, 107 N. Y. 55; *People* v. *Cady*, 143 N. Y. 100.)'

*Franklin Bien* and *P. T. Kimball* for respondent. The boarding house at which these appellants reside, being within the seminary grounds (it not appearing to the contrary, that in order to avail themselves of such boarding house, they must be students at the seminary), and it being conceded that these appellants are and each of them is a student at the theological seminary, they come within the prohibition of the Constitution which prevents them from gaining a residence at such seminary. (Const. N. Y. art. 2, § 3; *Chichester* v. *Inspectors of Election*, N. Y. L. J. Nov. 2, 1892; *Kronmiller* v. *Toplitz*, N. Y. L. J. Oct. 27, 1891; *People ex rel.* v. *Board of Inspectors*, N. Y. L. J. Oct. 26, 1892.)

BARTLETT, J. This is an appeal from an order of the General Term, first department, affirming an order of the Special Term, made on the 23rd day of November. 1894, striking from the registry list of voters in the city of New York the names, among others, of the appellants, John Neilson Barry, Henry Mesier, George Gunnell, Jr., and Thomas Henry Yardley.

The question as to where students of any seminary of learning in the city of New York are entitled to vote has given rise to much litigation and, not unfrequently, led to unseemly proceedings on the days of registration and election.

Before considering the cases of the present appellants, it is proper to call attention to the rule laid down by this court in

the *Matter of Goodman* (146 N. Y. 284), where Judge FINCH wrote the opinion.

In that case it was conceded that Bainton, the appellant, was a resident of the state and of the county and entitled to vote in the city of New York, but it was denied that he acquired any right to vote in the election district in which the seminary, which he entered and in which he took rooms, was situated. It was admitted that he could have registered in another district, which was his residence prior to his removal to the seminary, and would have been a qualified voter there, and, as Judge FINCH puts it, " the precise contention being that he did not lose his residence there by removing to the seminary, nor gain a new residence in the seminary district by his presence in it as a student."

This contention was upheld and the order affirmed declaring the appellant to be a voter in the district where he last resided prior to his removal to the seminary.

Judge FINCH, in his opinion, further says :

" We do not mean to say that a voter may not change his legal residence into a new district in spite of the fact that he becomes a student in an institution of learning therein, but the facts to establish such a change must be wholly independent and outside of his presence in the new district as a student, and should be very clear and convincing to overcome the natural presumption. In the present case there were no such facts. Presumably rooms in the seminary rented to students are to be occupied only during the prescribed period of study, and not permanently as a residence, and there was nothing before the court to show any change of residence beyond the temporary presence at the institution for the prescribed period of study. This construction obeys literally the constitutional mandate, and does not necessarily disfranchise a single citizen. It merely recognizes and applies the admitted truth, acted upon at every election, that the voting residence may be in one place and the actual abode in another. Usually, perhaps always, the voting residence remains unchanged until a new residence is actually acquired, but there can be no such acqui-

sition merely by an abode as a student in an institution of learning. Something else, beyond that fact and wholly independent of it, must occur to effect the change. The intention to change is not alone sufficient. It must exist, but must concur with and be manifested by resultant acts which are independent of the presence as a student in the new locality."

In the light of this rule we will consider separately the cases of these appellants, as each presents its own peculiar facts.

Article two, section three, of the Constitution of this state, as it existed in November, 1894, and exists now, reads as follows in regard to the question under examination, viz. :

" For the purpose of voting no person shall be deemed to have gained or lost a residence, by reason of his presence or absence, while employed in the service of the United States, \* \* \* nor while a student of any seminary of learning."

It will be observed that the Constitution explicitly provides that residence cannot be gained or lost by reason of presence or absence of a student of any seminary of learning.

It is, therefore, in harmony with this provision to require that the intent to change the legal residence must be manifested by acts which are independent of the alleged voter's presence as a student in the new locality.

The appellant John Neilson Barry made affidavit on the 16th day of November, 1894, that two years before that time he moved to the city of New York with the intent and purpose of making that place his permanent residence; that he went at once to No. 175 Ninth avenue where he took up his residence, it being a part of the property of the General Theological Seminary of the Episcopal Church, and entered upon his course as a student.

Barry went to the city of New York from the state of Virginia, where he had resided and voted, and on the 19th of November, 1892, he addressed the registrar of Warrenton, Va., a letter, in which he notified him that he had changed his residence to the city of New York and that his name should no longer remain on the list of registered voters and requested him to take it off.

On the same day he addressed a letter to Bishop Henry C. Potter of the city of New York, in which he said : " It is not my intention to resume my legal residence there " (Warrenton), " or at any other place in Virginia. On the contrary, my intention is to reside and vote in New York — clearly my legal residence is not at Warrenton, Virginia. As to my actual residence, if the term as used in the canon has any different meaning from the term legal residence, I consider that I am in point of fact an actual resident of New York city. My ecclesiastical residence is here, my legal residence is here, and I am actually living here without any present intention of assuming a residence legal, ecclesiastical, or actual, any where else. * * * Hoping that this statement of facts will satisfy you as to my being a resident of this diocese, and that you will receive me as a postulant, I am," etc.

It will be observed that these letters were written immediately after the general election of 1892, and relate to the ecclesiastical *status* of Barry and his right to be received as a postulant by reason of his residence in the diocese of New York.

We think Barry's case clearly discloses the intent to change his legal residence by acts which were independent of his presence as a student in the seminary ; there was a full compliance with the rule laid down in the *Goodman* case, and it follows that Barry's name was improperly stricken from the registry list.

The appellant Henry Mesier made an affidavit which disclosed the following facts, among others, viz.: He had resided in the city of New York since October, 1889, and from November, 1892, to May, 1893, he lived in a boarding house at No. 52 West 21st street in the city of New York ; in the summer of 1893 he spent his vacation on Long Island, and the following September he entered the General Theological Seminary as a student and took a room in the seminary building, No. 175 Ninth avenue, and entered at once upon his studies. Mesier swears that his intention to remain in New York is not conditioned upon or limited to the duration of

the seminary course which he is pursuing, nor is he required to give up his residence at the seminary at the termination of such course, but that he can occupy his room indefinitely so long as he finds it convenient to pursue the study of theology.

Under the rule laid down in the *Goodman* case Mesier did not lose his residence at No. 52 West 21st street, his last place of residence before entering the seminary, and he has at all times been legally entitled to register and vote in the election district in which that house is situated.

The order appealed from in his case must be affirmed.

The appellant George Gunnell, Jr., places before us the following material facts, viz.: He was a resident of Pennsylvania, but in 1887 he came to this state to attend Hobart College at Geneva; in 1891 he settled in the town of Sodus Centre, in this state, with the purpose and intent of becoming a resident of that town; in September, 1892, he entered the General Theological Seminary in the city of New York as a student and occupied a room at No. 175 Ninth avenue; while a student he engaged in the business of bookselling and was a lay reader in the Church of the Heavenly Rest; he is not obliged to give up his room at the seminary at the termination of his present course of study, and it is his intent to take up his residence in the seminary.

We do not think these facts are sufficient, in connection with the sworn intent, to establish a change of residence from the town of Sodus Centre to the seminary building in the city of New York. The facts that Gunnell sold books and was a lay reader are incidental to his course as a theological student; no acts independent of his presence in the seminary as a student are disclosed.

We think Gunnell during his course as a student at the seminary remains a resident of the town of Sodus Centre and is entitled to vote there precisely as if he was employed in the military service of the United States and stationed at some frontier post.

The order appealed from in his case must be affirmed.

The appellant Thomas Henry Yardley relies upon the following material facts, viz. : He was living with his mother in Rhode Island in 1888 when he went to college first in Connecticut, then in Massachusetts, and again in Connecticut, where he remained until the year 1892; in the fall of 1892 he entered the General Theological Seminary in the city of New York as a student, occupying a room at No. 175 Ninth avenue, in the seminary building; his occupation is student and teacher, and he can keep his room so long as he shall find it convenient to remain there for the purpose of studying theology; his intent is to establish his residence at the seminary.

We do not think there are acts disclosed independent of Yardley's presence as a student at the seminary which establish his legal residence there.    During his entire college and theological course he has remained, in contemplation of law, a resident of Rhode Island at his mother's home.

The order appealed from in his case must be affirmed.

We have to say in conclusion that unless the rule laid down in the *Goodman* case and followed in the case at bar is rigidly enforced the constitutional provision now construed will be nullified.

It may be urged that the enforcement of this rule will render it well nigh impossible for a student to establish a residence in a seminary of learning, but the very obvious answer is that the letter and spirit of the Constitution contemplate such a result; the sojourn of the student is assumed to be temporary, and the law preserves to him his former residence, notwithstanding his absence therefrom.

The order appealed from is reversed as to John Neilson Barry, with costs, and affirmed as to Henry Mesier, George Gunnell, Jr., and Thomas Henry Yardley, with costs.

All concur.

Ordered accordingly.