Matter of the Application of JOHN J. GARDINER, as
Deputy State Superintendent of Elections, to Direct
CHARLES L. FLEET et al., as Inspectors of Election in
the First Election District of the Eighth Ward of
the City of Rensselaer, to Remove from the Registry
List of Qualified Voters in said District the Names
of DAMIEN WYDRO et al.

(Supreme Court, Albany Special Term, October, 1917.)

Election Law — provisions of, as to registration of students at semi-
naries maintained by Franciscan order — when name stricken from
registry list.

> A student at the seminary of learning known as " St.
> Anthony's-on-the-Hudson," maintained by the Franciscan order,
> who abandons his Christian name by which he was formerly
> known and takes a new name as a member of said order and
> receives instruction as a candidate for the Roman Catholic
> priesthood, is not entitled to register in the election district in
> which the seminary is located and his name should be stricken
> from the registry list.

PROCEEDINGS upon the application of John J. Gardi-
ner, deputy state superintendent of elections, to direct
inspectors of election to remove from registry list of
qualified voters certain names.

Merton E. Lewis, Attorney-General (Arthur E.
Rose, Deputy Attorney-General, of counsel), for
petitioner.

Daniel H. Prior, for respondents.

RUDD, J. Under an order heretofore granted the
inspectors of election in the first election district of the
eighth ward of the city of Rensselaer were directed to

show cause why the names of Damien Wydro and twenty-eight others should not be stricken from the registry list which is to be used at the general election in this state to be held November 6, 1917.

The application is made upon the petition of John J. Gardiner, as deputy state superintendent of elections.

The petition alleges that the names of Damien Wydro and the others are those of persons who are now registered as students at a seminary of learning known as St. Anthony's-on-the-Hudson, located in the election district in question. That because each of the persons thus registered is a student at St. Anthony's-on-the-Hudson therefore they are not, and each one of them is not, a resident of the election district, and that therefore their names are improperly upon the register, and that they are registered in violation of section 163 of the Election Law and of section 3, article 2 of the Constitution.

Section 163 of the Election Law provides as follows: " For the purpose of registering and voting, no person shall be deemed to have gained or lost a residence * * * while a student of any seminary of learning."

Excepting the words " registering and " in the first line this section is a verbatim quotation of section 3, of article 2 of the Constitution.

The question therefore, for determination here, is whether the registrants, by reason of their membership as a part of the student body of the seminary of learning known as St. Anthony's-on-the-Hudson, have lost their residences in the places from which they came and have gained residences at the seminary by reason of which they are legally entitled to register and vote in the election district in which the seminary is located.

Upon the hearing it developed that St. Anthony's-on-the-Hudson is, in the words of the statute, a " semi-

nary of learning;'' that each one of the registrants in registering gave his occupation as '' a religious student;'' that the house in which they live is maintained by the Order of Minor Conventuals, which is an order commonly known as the Franciscan; that these students are being instructed for the Roman Catholic priesthood; that they are members of the order, which order owns and maintains the home in the first election district in the eighth ward of the city of Rensselaer, known as St. Anthony's-on-the-Hudson, in which all of these candidates for the priesthood live; that any male of the age of sixteen years or over professing the Roman· Catholic faith and with mental, physical and moral qualifications satisfactory to the superior of the order may be admitted to membership; that upon his admission to membership he makes a vow in public, at a ceremony held in a church in the presence of a congregation of people.

The vow is as follows:

'' I Frater N. N. * * * do hereby vow and promise to Almighty God, to Blessed Mary ever Virgin, to our Blessed Father St. Francis and to you, Father, that I will, during my whole life observe the Rule of the Friar Minors, as ratified by Pope Honorius, as declared by other Supreme Pontiffs, and according to the privileges granted by the Holy Apostolic See to the Order of Minor Conventuals; by leading a strictly community life, observing the form of the Holy Canons and of the Council of Trent, of the Apostolic Constitutions particularly those of Pope Urban, and of the statutes of the aforesaid Order, living in obedience, without proprietorship, and in chastity.''

That all of the respondents here have been admitted to membership in the order, having taken this oath in the manner above stated; that the statutes of the order provide that a member of the order shall live in

obedience to his superior and that he shall always make his home with the order.

The superior in charge of St. Anthony's is Father Gregory Scheuermann.

The statutes provide that each member of the order is not permitted to retain, as his home or place of abode or residence, any other place except the place where he may live as a member of the order. He is not permitted to receive or retain any money or property as an individual but all of his possessions, by his becoming a member of the order, he gives to the order. In the event of illness he does not return to his former home, but the order assumes toward him the obligation of caring for him, should he become ill or infirm. At his death the order provides for his burial and his burial place is in the cemetery of the order.

Some members of the order are known as lay members. They perform manual labor in and about the house and the property of the order. No question is made as to the right of the lay members of the order to register from this institution. Others of the members are trained and educated by the order, in the house of the order, for the Roman Catholic priesthood. Some of the order are already Roman Catholic priests. No question is involved as to the priests being residents qualified to register and vote in the district.

The respondents are all students being trained in the priesthood. They are being trained in the house of the order by members of the order and no one else is living there except members of the order.

If a member should become physically or mentally unfit for the priesthood he would still retain his membership in the order and would remain there as a member of the religious community. Such a member not being in the seminary as a student would clearly be entitled to register. He is not free to return to his

27

former home, even for a visit, except by permission of the superior.

He abandons the Christian name, by which he was formerly known, and takes a new name as a member of the order. This, in accordance with the statutes and traditions of the order, is for the purpose of giving evidence that he has renounced all his former connections, including family ties, family home and all worldly connections and associations he may have had, and that from henceforth he is to be associated in nowise with any family, home or residence except that provided for him as a member of the order.

The obligations incumbent upon the respondents as members of the order, their status in life, their place of residence as members of the order, they have all publicly proclaimed by taking the vow in uniting with the order.

Father Gregory, the superior of St. Anthony's-on-the-Hudson, testified that these respondents come not simply for the purpose of being educated for the Roman Catholic priesthood but that they come to be each a religeuse, a member of the Franciscan order. They come to St. Anthony's-on-the-Hudson only after a test has been made to ascertain their qualifications at some institution in Syracuse.

These respondents are now devoting their time to study and preparation for the priesthood, and after they have qualified they may be sent to a distant country or some other state as a Franciscan priest.

Their abode at St. Anthony's is only for such length of time until they may receive consent from their superior to go elsewhere.

It is not required that they pay anything for their tuition or their living. They render such incidental service and assistance to the institution as they may be able.

The father superior testified that the vow taken by the members of the order is such that the young man does not expect to go home, nor does he even ask.

In construing the same provision of the state Constitution which declares that: " For the purpose of voting, no person shall be deemed to have gained or lost a residence * * * while kept at any almshouse, or other asylum, * * * at public expense," it has been held that the fact of the presence in the Soldiers' Home at Bath of an inmate does not constitute a test of his right to vote, and is not to be considered in determining that question, but that the requisite qualifications to enable him to vote in the district in which the Soldiers' Home is located must be found elsewhere than in the fact alone that he lives in the home.

The mere fact that an inmate of the Soldiers' Home declares his intention to change his residence from New York to Bath, where the home is located, and his assertion that he resided in Bath, can only be accepted as conclusions from the circumstances detailed.

The court has held that the inmate's only intention in going to Bath was to be an inmate of the home and that only as such inmate his residency was to be continued. " He was not there as a citizen changing his residence, but as an object of well bestowed and deserving charity." He was in the institution because he was then " kept " at " public expense." " He continues there with the intention of making his residence in the institution, so long, as he says, ' as I shall be permitted to remain an inmate.' " These reasons were not sufficient to work an exception under the Constitution.

" He could not gain a residence by being an inmate, which means nothing more than his presence in the Home; and excluding that there is nothing in the case

to show that a residence in Bath had been acquired."
*Silvey* v. *Lindsay,* 107 N. Y. 55.

As was said in *Matter of Rooney,* 172 App. Div. 274:
" Residence does not depend in the slightest degree
upon the elective franchise;   *   *   *   Every man has
the right of suffrage under the conditions named in the
Constitution and laws, and one of the conditions of
the exercise of that right is that he must have been a
resident of the election district where he offers his vote
for a period of thirty days prior to the election. * * *
It is his intent to change or not to change his resi-
dence which is controlling; not his intent in reference
to his exercise of a purely political franchise."

In *Matter of Barry,* 164 N. Y. 18, the petitioners
seeking registration entitling them to vote were eccle-
siastical students in St. Joseph's Seminary, estab-
lished for the purpose of educating young men for the
Roman Catholic priesthood. No one was allowed to
enter or remain in this seminary as a student unless
he intended in good faith to become a Roman Catholic
priest and renounce all other residences or homes save
that of the seminary itself, and upon his admission to
the priesthood he continues in the seminary until
assigned elsewhere by his ecclesiastical superiors.

The court held: " The fact that a student enters a
seminary to be educated for a certain calling, and to
remain there after graduation until assigned to duty,
instead of a fixed course of four years, as is usual in
institutions of learning, does not entitle him to vote
in the election district in which such seminary is
situated."

In expressing the opinion of the court, Judge Bart-
lett said: " The fact that he is enrolled as a student in
an institution of learning has no effect whatever upon
his residence for the purpose of voting; *he could if he
chose acquire a residence at the place where the semi-*

*nary is located,* but this would have to be established by acts entirely distinct from his residence therein. The mere intention to change his residence would not suffice.''

Judge Bartlett further says: '' In the case at bar no acts which are distinct and independent of the presence of the petitioners in St. Joseph's Seminary are disclosed.''

In the *Matter of Goodman,* 146 N. Y. 284, Judge Finch said: '' Usually, perhaps always, the voting residence remains unchanged until a new residence is actually acquired, but there can be no such acquisition merely by an abode as a student in an institution of learning. Something else, beyond that fact and wholly independent of it, must occur to effect the change. The intention to change is not alone sufficient. It must exist, but must concur with and be manifested by resultant acts which are independent of the presence as a student in the new locality.''

In *Matter of Garvey,* 147 N. Y. 117, it was held that Barry, who was a student in the General Theological Seminary of the Episcopal Church, in New York city, who had taken up his residence in a part of the property of the General Theological Seminary in the city of New York, having come to New York from the state of Virginia, was entitled to register and vote from his newly acquired residence in New York, because Barry had disclosed '' the intent to change his legal residence by acts which were independent of his presence as a student in the seminary.''

The acts referred to by the court consisted in addressing a letter to the registrar of Warrenton, Va., where Barry had formerly resided, in which he notified him that he had changed his residence to the city of New York, and also in the addressing of a letter to Bishop Potter in which he had said that it was his intention to reside and vote in New York.

This the court held was a full compliance with the rule laid down in the *Goodman* case.

The compliance consisted in Barry establishing his residence in New York city before his admission as a student in the seminary, in other words, he first established his ecclesiastical status as a resident of the diocese of New York, thus qualifying himself for admission to the seminary, and he therefore became a resident of New York as evidenced by acts entirely separate and apart from attendance at the seminary.

In *Matter of McCormack*, 86 App. Div. 362, it was held that a student at a seminary of learning is not entitled to vote in the election district in which the seminary is situated, unless it appears that, by some unequivocal act, independent of his attendance at the seminary, he has abandoned such other residence; that letters written by the student to the mayor of the city in which the seminary is located, stating that it was his intention when he became a student at the seminary to make it his actual and legal residence, but which do not suggest any fact showing such a change of residence other than his abode at the seminary, are insufficient to effect a change of residence.

In the case Justice Woodward said: "The petitioner does not suggest a single fact to show a change of residence outside of his abode at the seminary, either in his letter to the mayor or in his petition.

"The declarations of the petitioner made in a letter to the mayor of Yonkers and to the board of registry of the district are of no more consequence than his verbal declarations to the board of registry, and as no facts bearing upon the change of residence were placed before the court, *which were independent of the temporary residence of the petitioner as a pupil in the seminary,* we are clearly of opinion that the order denying the motion was proper."

Misc.]. Supreme Court, October, 1917.

We have quoted somewhat at length from the decisions in this state, illuminating the question here involved. From all of the cases it seems clearly that the rule is that where an intent to change an elector's residence is evidenced by acts which are independent of his presence in an institution of learning he may acquire a residence in the district where he attends as a student.

The respondents here contend that because they are members of an order and in acquiring such membership they have taken a vow at church in the presence of a congregation of people, renouncing all other homes, save that at the seminary; that because they have consecrated their lives, giving all of their mental, physical and spiritual effort to the order of which they are members, and that incidentally they have renounced their former christian names and assumed other names, under which they have registered as qualified voters, that by reason of these public acts, this public renunciation and public assumption of obligation, that therefore they have brought themselves within the rule which the courts of this state have laid down requiring the intent to change a residence to be evidenced by acts which are independent of their presence as students in an institution of learning.

We must be governed, however, by the determination already made involving the same situation. In *Matter of Barry,* 164 N. Y. 18, above cited, it was clearly held that one does not acquire a residence in a theological seminary because, under its rules, on entering he is required to renounce all other residences, and after he has completed his studies he must remain in the seminary until assigned elsewhere by his ecclesiastical superiors.

That is just the situation here, the young men

renounce their former residences and their former names, they remain for all time in the order, possibly in this home, possibly somewhere else, according to the wishes and instructions of their superiors. They are there as students, they have registered as such; whether in complying with the rules as to renouncing their former residences they have taken an oath is not material, they have, as did Barry, complied with the regulations. If they continue as students until ordained as priests, during their residence at the seminary as such, their status is clearly fixed, and under the Constitution they cannot during such studentship acquire a residence which entitles them to registration in the district where they make their sojourn.

The respondents are not entitled under the law to register in the first election district of the eighth ward of the city of Rensselaer and their names should be stricken from the registry list to be used at the general election to be held on the 6th day of November, 1917. An order may be entered in accordance herewith.

Ordered accordingly.