In the Matter of the Application of JOHN J. GARDINER, as Deputy State Superintendent of Elections, Appellant, to Direct DANIEL FREAR and Others, Constituting the Board of Inspectors of Elections in the Third Election District of the Town of Esopus, County of Ulster, to Remove from the Registry List of Qualified Voters n .Said. District the Names of JOSEPH G. TROCH and Others, Respondents.

Third Department, July 1, 1918.

**Elections — qualification of voters — theological students.**

Occupants of Mount St. Alphonsus, a branch of " the Congregation of the Most Holy Redeemer," are not entitled to vote in the town where such institution is located, where there is nothing to indicate that they would be there, except for the fact that they are students.

The fact that their location and vocation is determined for them by their superior rather than by themselves, does not affect the question.

The right of students to vote in the town where the institution which they attend is located must depend on acts independent of their presence as students in that locality.

APPEAL by the petitioner, John J. Gardiner, as Deputy State Superintendent of Elections, from an order of the County Court of Ulster county, entered in the office of the clerk of said county on the 26th day of November, 1917, dismissing his petition herein.

*Merton E. Lewis, Attorney-General [Arthur E. Rose, Deputy Attorney-General,* of counsel], for the appellant.

*Roscoe Irwin,* for the respondents.

COCHRANE, J.:

The respondents, thirty-six in number, are occupants of Mount St. Alphonsus, an institution in the town of Esopus, Ulster county, N. Y. The question involves their right to vote in that town. They all registered as theological students. If their presence in the institution is merely because they are students, then clearly that fact standing by itself gives them no right to vote in Esopus, under article 2, section 3, of the State Constitution which provides as follows: " For

the purpose of voting, no person shall be deemed to have gained or lost a residence  *  *  *  while a student of any seminary of learning."

It is claimed in behalf of the respondents that Mount St. Alphonsus is a monastery and not a " seminary of learning." Terms are unimportant.  The fact is undisputed that these respondents are students and that such is their principal occupation in the institution and as bearing on the question here involved it is of little importance whether the institution be denominated a monastery or a seminary.  The purpose of the presence of the respondents therein and the nature of their occupation is the important feature.

In *Matter of Goodman* (146 N. Y. 284) it is written in the opinion: " We do not mean to say that a voter may not change his legal residence into a new district in spite of the fact that he becomes a student in an institution of learning therein, but the facts to establish such a change must be wholly independent and outside of his presence in the new district as a student, and should be very clear and convincing to overcome the natural presumption."

The institution at Esopus is one branch of a corporation, the corporate name of which is " The Congregation of the Most Holy Redeemer."  The principal headquarters of the corporation are at Brooklyn.  There are several similar institutions in different parts of the State belonging to the corporation.  It is under the control of a superior in Brooklyn.  Those who enter the institution become members of the congregation or community the purpose of which is to promote a holy and perfect life as far as poss ble, and to ameliorate the condition of the human race.  A prospective member of this congregation or order is admitted to what is termed the novitiate at a place in Maryland, which is a place of preparation with a view to a determination by him whether he desires to join the congregation, and also whether he is to receive the approval of the superior of the congregation. After this probationary period, which continues for one year, if approved he takes a public vow or makes a public profession as it is called, binding himself until death to be faithful to his vows and the rules of the congregation, and the latter binds itself to care for him until his death.  Then he is

assigned by his superior to one of the branch institutions either at Esopus or elsewhere. By his public profession he renounces his home and becomes subject to the directions and mandates of the superior during his life. He goes where he is sent and does as directed by the superior. Some of the members of the congregation become teachers, some students, and some become lay brothers. The determination is made not by the members but by the superior. At the institution in Esopus ample provision is made for studying theology, philosophy and other branches. Father Fisher of that institution testified as follows: " Q. * * * When is it determined that a member of this institution, or an applicant, or a person entering it — whatever term may be designated — when is it determined whether he shall be a student of philosophy or study for the priesthood, or be a lay member; when and where is that determination made, and by whom? A. That determination is made sometime before they are sent out; it is made by the higher superior who resides in Brooklyn. * * * Q. Is it made before their coming to Esopus? A. Made before they come there. Q. Are they sent there as students, as lay members, or as instructors? A. They are. * * * Q. None of the respondents are lay brothers? A. They are not. Q. Are they priests? A. Some are. Q. And the remainder of them are students? A. Yes, sir. Q. Those of the respondents who are priests are they still continuing a course of study in the institution, or are they instructors? A. They are still pursuing a course of study in the institution. Q. All of the respondents are at the present time taking a course of instruction or learning at Mt. St. Alphonsus? A. They are."

It appears that the respondents are in the Esopus institution solely as students. They were sent there to become students and to pursue a course of instruction. It does not appear that their presence in that institution conduces to any other purpose than to receive theological training. In other words they are just what they described themselves to be when they registered, namely, theological students. The fact that their location and vocation is determined for them by their superior rather than by themselves does not affect the question. In *Matter of Barry* (164 N. Y. 18) it appeared

that a person in a seminary had renounced all other residences or homes save that of the seminary itself, and continued there until assigned elsewhere by his ecclesiastical superiors, but it was held that this did not entitle him to vote in the election district where the seminary was situated. That case in the Appellate Division is reported in 61 New York Supplement, page 124, where it was held that a rule requiring the occupant of a seminary to renounce all other residences or homes save that of the seminary itself was an ecclesiastical rule only and not a rule of political power and that " the intent to change the legal residence must be manifested by acts which are independent of the alleged voter's presence as a student in the new locality." This last statement is in accord with and is based on the rule as declared in the *Goodman Case (supra)* and *Matter of Garvey* (147 N. Y. 117).

The right, therefore, of these respondents to vote in Esopus must depend on acts independent of their presence as students in that locality. The weakness of their position is that there is nothing to indicate that they would be there except for the fact that they are students. No other explanation of their presence there is vouchsafed. It is true that they make certain vows subordinating their rights and their will to their superior; they become members of the religious order. They surrender the control of their own lives. Their future career is determined for them by others and they are sent to the institution at Esopus by virtue of such determination. But the controlling fact remains that they are sent to the institution at Esopus to become students and for no other purpose, and there is no other act or fact independent of their presence there as students indicating an intent to establish a legal residence there. The case is essentially different from the *Garvey Case (supra)*. There it was necessary for the student to establish his residence in the locality of the seminary before he could be admitted as a student therein. There was in that case a decisive act indicating the intent to acquire a voting residence before and as a necessary preliminary to his admission to the seminary as a student. He was a voter in that locality irrespective of his presence there as a student. Here the presence of the respondents in this institution is solely in their character as students disconnected with any

act indicating an intention to be or remain there in any other capacity. If they had ceased to be students or were living there in any other capacity, a far different question would be presented. But as the case is presented to us they are merely students pursuing a course of instruction, and it does not appear that they would be in that voting district except for that fact.

Our attention is called to the case of *Matter of Gardiner* (101 Misc. Rep. 414), the facts in which case are similar to those which here exist. The institution in that case does not seem to have been denominated a monastery but it possessed many if not quite all the monastic features of the present case. The opinion of Mr. Justice RUDD in that case is pertinent here and we concur in his opinion.

It follows that the order should be reversed, with ten dollars costs and disbursements, and the application should be granted, without costs.

All concurred.

Order reversed, with ten dollars costs and disbursements, and application granted, without costs.