In the Matter of the Application of G. CHARLES GEIS, Voter, for an Order to Strike from the Register of Voters of the Twenty-seventh Election District of the Fourth Assembly District of the Town of Greenburgh, County of Westchester, the Names of GUSTAVE RYERSON and Others.

Supreme Court, Westchester County, October 26, 1936.

T. *Channon Press*, for the petitioner.

*Sydney A. Syme*, for the prospective voters.

CLOSE, J.   This is a proceeding pursuant to section 331 of the Election Law, asking for an order directing the inspectors of election in the twenty-seventh election district of the town of Greenburgh to convene and strike certain names from the registration books of such district.   It is conceded that the board of inspectors and the prospective voters have duly received notice of the application.

The prospective voters are all living at " Camp Elmsford," a camp located in said election district, which is organized and maintained pursuant to the provisions of an act passed under date of March 31, 1933, now numbered section 585 of the Federal Conservation Law (U. S. Code, tit. 16, § 585), and certain executive orders issued to carry this statute into effect.   The pertinent part of the statute reads as follows: " For the purpose of relieving the acute condition of widespread distress and unemployment  *  *  * the President is authorized  *  *  *  to provide for employing citizens of the United States  *  *  *  [and] to provide for housing the persons so employed and for furnishing them with such sub-

sistence, clothing, medical attendance and hospitalization, and cash allowance, as may be necessary."

Under this act, one branch of the service thus established was designated and is known as the National Park Service. All the prospective voters claim to be employed in that service. When the prospective voters appeared for registration, their right to register was challenged, and each voter subscribed and swore to a challenge affidavit.

I have examined these affidavits with care and in no single instance was any member of the camp whose name is sought to be stricken from the registry a resident of the twenty-seventh election district prior to the time that he entered this camp. Many of them give other camps maintained under this same service as their previous place of employment, and others give various places scattered throughout the United States. Their right to vote is challenged because they are concededly Federal employees, and as such employees may neither gain nor lose a voting residence while engaged in such employment. (State Const. art. 2, § 3; Election Law, § 151.)

Each of the prospective voters has filed an affidavit in opposition to this motion. The affidavits are identical except as to minor changes such as the length of time they have resided at the camp, salary received, etc., and each claiming that Camp Elmsford is his legal home and residence. The challenge affidavits, however, disclose that many of the applicants for registration have wives living in various parts of the country. Many others, if they have voted at all, voted at places far distant from this election district. It appears further from the affidavits in opposition that the men are all paid a certain wage per month by the government and from this amount there is deducted a certain portion to cover the cost of their board and sustenance. They are clearly " Federal employees " as defined by the State Constitution and section 151 of the Election Law, and their names must be stricken from the roll for the reason that they are not entitled to vote in the district in which the camp is located unless there are extraneous circumstances to show that they have an intention of making such election district their domicile and place of residence irrespective of their employment in Camp Elmsford. The replying affidavits are bare of any facts to show a change of residence or intention to change their residence outside of their attendance at the camp. Under such circumstances, it has been held repeatedly that they are not entitled to vote. (See *Matter of McCormack*, 86 App. Div. 362, wherein it was held by the Appellate Division in this department that a seminarian residing at St. Joseph's Seminary, city of Yonkers, could not gain a voting

residence by merely declaring that he intended to make the seminary his permanent home. See, also, *Matter of Garvey,* 147 N. Y. 117; *Matter of Blankford,* 241 id. 180.) In order to entitle the occupants of this camp to become legally entitled to registration, there must be some evidence other than their mere attendance at the camp, to show that the applicant has chosen a new residence.

I am aware that there are cases where such findings have been made. (*Matter of Cunningham,* 45 Misc. 206.)

The argument is made that unless these prospective voters are permitted to vote here, they are disfranchised and will be unable to vote anywhere. If that is the result, it is because of their failure to comply with the plain provisions of the Election Law. If they had, prior to their joining the National Park Service, established a legal residence, they could have taken such steps as would entitle them to vote at their last legal residence.

It seems to me that the language of Mr. Justice COLLINS in *Matter of Machol* is peculiarly appropriate in describing the evil that would result if occupants of camps, such as Camp Elmsford, were permitted to vote. In speaking of a petitioner who had voted last year at a certain address in the city of New York and then had been refused registration where he was rooming in a dormitory at Columbia University, after pointing out the fact that the petitioner had never resided anywhere else except in the city of New York, he says: " In no sense is this petitioner a transient or itinerant voter; he is not a floater. The conclusion is aimed at temporary residents."

It is perfectly apparent from reading this record that each one of these prospective voters is a temporary resident at Camp Elmsford and to permit them to vote would be a flagrant violation of the Constitution of the State of New York and of the Election Law.

The motion is granted. If counsel desires to review this decision, I would be glad to request the Appellate Division to hear the appeal on the original papers so that the matter can be tested prior to election day. Submit order.