JAMES PALLA et al., Respondents, *v.* SUFFOLK COUNTY BOARD OF ELECTIONS et al., Appellants.

Second Department, December 13, 1971.

*George W. Percy, Jr., County Attorney (Melvyn Tannenbaum* of counsel), for appellants.

*Burt Neuborne* and *Bruce J. Ennis* for respondents.

*Louis J. Lefkowitz, Attorney-General (Samuel A. Hershowitz* and *A. Seth Greenwald* of counsel), appearing pursuant to section 71 of the Executive Law and *amicus curiae*.

BENJAMIN, J.  The Board of Elections of Suffolk County and its Commissioners of Election appeal from that portion of an

order of the Supreme Court, Suffolk County, which granted relief on the petition, as to 64 of a total of 81 petitioners, directing that they be allowed to register and vote in the November 2, 1971 general election. The proceeding was brought under section 331 of the Election Law. These 64 petitioners are all students at the Stony Brook campus of the State University residing in dormitories in Election District No. 1 of the Town of Brookhaven in Suffolk County.

This proceeding is the sequel to a prior similar proceeding against the appellants, instituted also in the Supreme Court, Suffolk County, on a petition dated October 7, 1971. That proceeding was entitled *Blumenthal* v. *Suffolk County Bd. of Elections.* Attached to the petition therein were affidavits of 8 of the petitioners and affirmations of 168 other petitioners, all student dormitory residents who had been enrolled as such at Stony Brook for from one to four years, claiming wrongful denial of voting registration by the appellants. There were other representations of fact and stipulations to the effect that all the petitioners were citizens of the United States and were over the age of 18 years or would be before November 2, 1971; were living on the Stony Brook campus and had lived there for at least three months or will have by November 2, 1971; considered themselves residents of Suffolk County; intended upon graduation to establish a residence apart from their parents; had not been physically present on the campus during the summer of 1971; had no dormitory accommodations set aside for their use during that period; and had been refused registration by the appellants when they attempted to register on October 1 or 2, 1971 to vote in Suffolk County.

The prior proceeding came before Mr. Justice D. ORMOND RITCHIE, who ruled on it on October 22, 1971. Finding that each of the 176 petitioners before him had been denied registration by the appellants under section 151 of the Election Law, which the appellants interpreted as barring a student at any institution of learning from gaining or losing residence while in that status, Justice RITCHIE stated that that section does not impose ineligibility to register or vote because of student status solely and ruled that the Board of Elections had erred when it summarily rejected the petitioners' applications. He directed that the rejected 176 applicants reapply for registration as voters on October 26, 27, 28 and 29, 1971, and that they be required at that time to answer a questionnaire containing 22 questions propounded by him and to swear to the truth of their answers. He directed also that, in the case of any applicant who was a citizen of the United States, over 18 years of age, and had resided

for a period of three months or more at the State University at Stony Brook, he or she was potentially eligible for registration as a voter in Election District No. 1 of Brookhaven; and that the answers to the questions propounded to each applicant should determine his or her eligibility. Eighty-three of the petitioners submitted filled-out questionnaires with sworn answers to the Board of Elections. The board accepted for registration only 2 of the 83, a married couple living in the Stony Brook dormitory, and rejected the remaining 81.

The rejected 81 then sought supplemental relief by way of the instant proceeding. This proceeding bears a different caption from the original proceeding, though all the petitioners herein were participants in the original proceeding. This proceeding came before Mr. Justice FRANK P. DELUCA, who found, without taking testimony, that the sworn affidavits of the petitioners who claimed Stony Brook as their place of residence qualified such of them who had not registered elsewhere to vote in Election District No. 1; and directed that the 64 petitioners who had not registered to vote elsewhere should be registered and allowed to vote in that district in the November 2 election. It is from this portion of Justice DELUCA's order that the appeal has been taken.

Although the 1971 election is now a matter of history, there still remains the meaningful issue of the successful petitioners' right to register to vote in Election District No. 1 of Brookhaven for succeeding elections. While the petitioners and the appellants and the Attorney-General appearing as *amicus* address themselves in their arguments to issues of the constitutionality of section 151 of the Election Law and its basis in section 4 of article II of the State Constitution, it appears that the sole issue in the case raised by the pleadings before the Special Term and the decision there which is the basis for this appeal is whether the Board of Elections ruled properly when it rejected the petitioners' applications for registration to vote on the basis of the board's finding of nonresidency in fact in the district in question, despite the sworn affidavits submitted by the students.

Section 151 of the Election Law provides that for the purpose of registering and voting no person shall be deemed to have gained or lost a residence by reason of his presence or absence while engaged in a number of occupations involving prolonged absence from home, including engagement as a student in any institution of learning. Subdivision (c) thereof provides in part that, in determining a voter's qualification to vote in a particular election district, the board to which an application for registration is made shall consider, in addition to the applicant's

expressed intent, his conduct and all attendant circumstances relating thereto and may consider his financial independence, business pursuits, employment, income resources, residence for income tax purposes, age, marital status, residence of parents, spouse and children, if any, leaseholds, situs of personal and real property registration and such other factors that it may reasonably deem necessary to determine the qualification of an applicant to vote in an election district within its jurisdiction.

The foregoing provision of section 151 is the probable source of the questions ordered by Justice RITCHIE to be put to the petitioners in the questionnaire he formulated for use by the Board of Elections in this case. The procedures for challenging prospective registrants are prescribed by section 171 of the Election Law and should be utilized. Subdivision 1 of that section states that any person who applies personally to any registration board may be challenged by any member of the board if he has reason to suspect that the applicant is not entitled to be registered. Subdivision 2 calls for the board member to obtain from the person so challenged sworn answers to a questionnaire set forth in detail in section 172 of the Election Law. Subdivision 3 directs that, if the applicant's answers satisfy a majority of the board of his right to be registered, they shall register his name as a voter; and that, if not, they are required to point out to the applicant the qualifications he lacks as a voter. The rejected applicant may then avail himself of the procedures of section 331 of the Election Law to obtain court review of the legality of this refusal. It is from the appellant board's refusal based upon the substitute questions proposed by Justice RITCHIE that this appeal was taken. An examination of the questionnaire prescribed in section 172 shows many similarities to the questions appearing in the questionnaire ordered to be used by Justice RITCHIE, the replies to which served as the basis for Justice DeLUCA's order that the 64 petitioners here be allowed to register and vote in the 1971 election.

The indicia of the establishment of a change in permanent residence for registration for voting are (1) physical presence in the district, (2) an established intent to make the new place of abode one's permanent residence and (3) an established intent to abandon permanently and not to return to live in one's old permanent residence. Hence the basic test, aside from physical presence, is one of *bona fides* with respect to the last two factors above. The declarations of applicants concerning their intent to reside in the State and in a particular county and election district are not conclusive; the election officials may look to actual facts and circumstances (*Whittington* v. *Board of Elec-*

*tions for Onondaga County,* 320 F. Supp. 889, 893). Residence in a university dormitory satisfies the requirement of physical presence. But under section 151 such residence does not foreclose the necessary inquiry into the *bona fides* of the applicant's claim that by taking up that residence he is in fact establishing a new permanent residence there and abandoning permanently his old residence, never to return to live there permanently. In making this inquiry election officials and courts must examine the relevant factors set forth in section 151, aware of the fact that the factor of dormitory residence, while raising a question on the issue of *bona fides,* forecloses neither a negative answer (*Matter of Garvey,* 147 N. Y. 117) nor an affirmative answer (*Matter of Robbins* v. *Chamberlain,* 297 N. Y. 108). The issue to be resolved with respect to each individual applicant must be decided on the particular facts in his or her case tending to establish whether, when the applicant left his or her old home to go off to college, he or she intended never to return or left intending to go back to his or her home community when his or her college educations shall have been completed. The sole issue to be determined is the *bona fides* of each applicant's claim of change of permanent residence.

The determination of Justice DeLuca was made solely on the basis of the petitioners' sworn responses to the questions in the questionnaire. The basis for this procedure was the claimed lack of sufficient time to hold hearings on the eligibility for registration of each petitioner. The proper procedure for a court which deals with challenges by an election board to the right of an applicant to register is that the issues of fact involved should be determined only after the court has heard proof which contemplates the swearing of witnesses and recording of their testimony (*Matter of Neal* v. *Inspectors of Election of First Election Dist. of Town of Lincklaen,* 286 App. Div. 1114).

The order should be reversed insofar as appealed from, on the law, without costs, and the proceeding remanded to the Special Term for further proceedings in accordance with this opinion.

HOPKINS, Acting P. J., GULOTTA, CHRIST and BRENNAN, JJ., concur.

Order reversed insofar as appealed from, on the law, without costs, and proceeding remanded to the Special Term for further proceedings in accordance with the opinion rendered herewith.