STEVEN GORENBERG et al., on Behalf of Themselves and All Others Similarly Situated, Appellants, v. ONONDAGA COUNTY BOARD OF ELECTIONS et al., Respondents.

In the Matter of SUSAN J. BELL et al., Appellants, v. IDA M. ROSSI, as Republican Commissioner of Elections for the County of Oneida, et al., Respondents.

Fourth Department, January 20, 1972.

*Richard J. Brickwedde* for Steven Gorenberg and others, appellants.

*Ronald Crowley* for Onondaga County Board of Elections, respondent.

*Louis J. Lefkowitz, Attorney-General* (*Ruth Kessler Toch* and *William Kogan* of counsel), respondent.

*Michael E. Getnick* (*Burt Neuborne* of counsel), for Susan J. Bell and others, appellants.

*Richard A. Frye* (*William Halpin* of counsel), for Ida M. Rossi and others, respondents.

GABRIELLI, J. The proceedings which are the subject of these appeals challenge the constitutionality of section 151 of the Election Law, as amended by chapter 1096 of the Laws of 1971, upon the stated grounds that it is violative of the due process guarantee of the Fourteenth Amendment, the equal protection clauses of the State and Federal Constitutions, as well as the Federal statute prohibiting different standards to be applied to various classes of voters (U. S. Code, tit. 42, § 1971, subd. [a], par. [2], subpar. [A]).

Petitioners are students attending colleges and universities in Onondaga and Oneida Counties, who claim their right to be registered and to be permitted to vote, following the enactment of the Voting Rights Act of 1970 (U. S. Code, tit. 42, § 1973aa) which enfranchised 18-year-olds for Federal, State and local elections. There is no dispute that they would otherwise qualify provided they could satisfy the proper residency requirements of the Election Law. Basic to a solution of the issues presented is whether the statute (Election Law, § 151) is constitutionally invalid as to these petitioners and others similarly situated. We agree with Special Term that the provisions of this section were validly enacted and do not contravene petitioners' rights nor, in fact, those others similarly situated.

A voter's qualification is spelled out by section 150 of the Election Law which, in general, provides that a person may vote if he " shall have been a *resident* of this state, and of the county, city, or village for three months next preceding an election and has been duly registered in the election district of his residence." (Italics added.) Petitioners have no quarrel with nor do they

challenge this provision. The statute under attack (Election Law, § 151) merely and unequivocally provides that for "the purpose of registering and voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence * * * while a student of any institution of learning * * * Any person applying for registration who claims to [be a student] shall file with the board * * * a written statement showing where he actually resides and where he claims to be legally domiciled ". Subdivision (c) contains a recitation of matters which the board of elections *may* consider in determining an applicant's residence for voting purposes. The consideration of the criteria set forth in this section applies only to an assessment of the person's status as a resident and his qualification to vote, which is the expressed subject of section 150, and it follows that the items mentioned in section 151 are nothing more than an elaboration of the criteria to be considered in assessing the qualification to vote envisioned in the preceding section, items which have always been matters properly considered in making a determination of one's " residence ". No additional *qualifications* are set forth or mandated.

We wish to make it clear that if a person is over 18 and qualifies as a resident of the district in which he wishes to vote, his failure to have a business pursuit, or to own real property, or to own personal property, or, in fact, to have a source of income cannot be grounds for a denial of his right of franchise. The statute under review does not hold to the contrary and, if it appears that any board of election incorrectly interprets or incorrectly applies this provision it may be required to rectify any illegal application of the statute. We hold that a student voter is entitled, under the statute, to the same treatment and test as any other voter and a determination of his residency is to be made on grounds no more stringent or restrictive than any other voter.

As long ago as 1887, the main provisions of the present section 151 have been considered neutral. It appeared then, as it should now, that section 4 of article II of the State Constitution and section 151 of the Election Law say that, for the purposes of registering and voting, no person shall be deemed to have gained or lost a residence " by reason of his presence or absence * * * while a student " of any institution of learning. Those enactments have been construed by the courts, and have been held to mean at least this: that a student on the campus of an educational institution does not, without more, accomplish a change of voting residence (*Matter of Garvey,* 147 N. Y. 117;

*Matter of Barry,* 164 N. Y. 18; *Matter of Blankford,* 241 N. Y. 180; *Matter of Watermeyer* v. *Mitchell,* 275 N. Y. 73; *Palla* v. *Suffolk County Bd. of Elections,* 38 A D 2d 84). The quoted constitutional and statutory enactment "disqualifies no one; confers no right upon any one" (*Silvey* v. *Lindsay,* 107 N. Y. 55, 61). It means only that such presence at a seat of learning is not "a test of a right to vote", and is not to be so regarded. The person offering to vote must find the requisite qualifications elsewhere, just as any other voter. If a student seeks to register in his educational community, he should be required —just as everyone else — to present evidence of a bona fide residence. None of the new enactments mentioned was intended to grant a preference to students over any other citizen.

Nor do we interpret the statute's requirement of an affidavit as unconstitutionally discriminatory. In recognizing the right of States to deal with categories of the electorate, the Supreme Court has spoken with force and has, for instance, held that the State of Texas was "free to take reasonable and adequate steps, as have other States, to see that all applicants for the vote actually fulfill the requirements of bona fide residence" (*Carrington* v. *Rash,* 380 U. S. 89, 96) and that a State may always enact laws which reasonably regulate the electoral process (*Williams* v. *Rhodes,* 393 U. S. 23, 29) and further that "the Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution." (*Williams* v. *Rhodes, supra,* pp. 29, 30). We recently had occasion to construe the constitutionality of section 150 of the Election Law and we observed that "(b)oards of election should have the necessary opportunity to investigate the qualifications of those seeking to exercise their franchise. We take judicial notice that in some counties in this state, the number of potential new registrations may run into thousands" (*Matter of Rabin* v. *Onondaga County Bd. of Elections,* 37 A D 2d 471). See, also, *Palla* v. *Suffolk County Bd. of Elections* (*supra*), involving the right of students at Stony Brook to register and vote, where the court held it necessary that an inquiry be made into the particular facts tending to establish residence beyond physical presence in a particular election district. In that case, the constitutionality of section 151 was presented and the court unequivocally applied an obviously valid statute when it directed that the eligibility of the petitioners therein be determined by the election officials based upon "the relevant factors set forth in section 151".

We are unable to subscribe to the dissenter's theory that mere presence in a district creates a presumption of voter residence under either section 150 or 151 of the Election Law. By this interpretation, he would impose upon all boards of election the burden of disproving residence in all such cases, a result never intended by the framers of the statute and certainly not dictated by reason. Such a presumption was rejected in *Palla* (*supra,* p. 88), where the court further held that the basic test was one of *bona fides* and that '' the declarations of applicants concerning their intent to reside in the state and in a particular county and election district are not conclusive; the election officials may look to actual facts and circumstances (*Whittington* v. *Board of Elections for Onondaga County,* 320 F. Supp. 889, 893) ''; and, as stated in *Palla, supra,* these facts and circumstances must indicate such an intent to reside in the State, county and election district *as well as* the abandonment of one's old permanent residence, all based on the criteria mentioned in section 151.

Neither can we embrace the argument that section 151 leaves the right to vote '' to the whim of the individual election official ''. Not only was such a result not intended, but as we have already spelled out, a student's right to vote is entitled to be tested by the same criteria as any other prospective voter. If he is a resident, he should have the right to vote, but his status as a student entitles him to no greater right than that possessed by any other person. If the dissent's complaint against the alleged power reposed in election officials is pointed to an illegal application of the statute by local officials, this cannot afford a basis for declaring the statute unconstitutional. Remedies have always been available to correct an illegal or unconstitutional *application* of any law. We have previously affirmed a determination sustaining a student's right to vote, based upon the same considerations and criteria employed in nonstudents' applications (*Matter of Reiner* v. *Board of Elections of Onondaga County,* 28 A D 2d 1095 [affg. 54 Misc 2d 1030], affd. 20 N Y 2d 865) ; and, of course the courts are prepared to similarly protect the rights of the newly enfranchised voters. We can perceive of no reason why students should be treated differently — and there are none dictated by the statute.

Our attention has been called to determinations made by several foreign courts and it is urged that these decisions held unconstitutional, statutes similar to section 151 of the Election Law. We do not so interpret these cases. *Wilkins* v. *Bentley*

(189 N. W. 2d 423 [Sup. Ct. Mich., 1971]) properly overruled and held invalid the lower court's construction of a similar statute which had determined that a student must overcome a rebuttable presumption that he is not a resident in the locale of the institution of learning. There is no such presumption, actual or intended here. *Jolicoeur* v. *Mihaly* (5 Cal. 3d 565) merely disapproved of an opinion of the California Attorney General who had ruled that for voting purposes the residence of an unmarried minor will normally be his parent's home. Interestingly, this case held, as we do, that student status is a neutral fact in determining residence for voting purposes. *Kennedy* v. *Meskill* (U. S. Dist. Ct., Conn., Sept. 13, 1971) did not involve a constitutional attack upon a somewhat similar statute, but dealt with an administrative failure or refusal to comply with the local statute. Other such cases have been cited as have several opinions of Attorneys General in other jurisdictions, in all of which we find distinguishing features.

The broadening of the right of franchise has been a wise and necessary step. Legislative bodies having thus spoken in this direction, we deem it proper to inform local boards of election to interpret the Election Law so that every eligible person be given the right to exercise his vote in order that this fundamental right is not abridged.

The orders dismissing the petitions should be affirmed.

CARDAMONE, J. (dissenting). These appeals present for our determination the effect of respondents Boards of Elections of Onondaga and Oneida Counties' refusal to register petitioners for voting purposes.

All the petitioners are college students variously attending Syracuse University (Onondaga County) and Utica College, Kirkland College, and Hamilton College (Oneida County); all are citizens of the United States over the age of 18; and all claim residence in the college community in which they live.

The status of petitioners and their challenge to respondents' actions on each appeal are sufficiently similar for common treatment.

The 1970 Federal Voting Rights Act lowered the minimum voting age for Federal, State, and local elections from 21 to 18 years (U. S. Code, tit. 42, § 1973aa). New York amended section 151 of the Election Law (L. 1971, ch. 1096, eff. July 2, 1971) providing in substance (a) for the purpose of registering and voting, no person shall be deemed to have gained or lost a resi-

dence by reason of his presence or absence, while a student; (section 4 of Article II of the New York State Constitution contains a similar provision); (b) residence, as used in the article, is deemed to mean the place where a person maintains a fixed, permanent and principal home and to which he intends to return; and (c) in determining a voter's qualifications the election board in the district shall consider the applicant's expressed intent and may consider his financial independence, business pursuits, employment, income sources, residence for income tax purposes, age, marital status, residence of parents, spouse and children, leaseholds, situs of personal and real property owned by him, motor vehicle and other personal property registration, and such other factors as it may deem necessary to determine the qualification of an applicant to vote.

Section 150 of the Election Law entitled " Qualification of voters " defines a voter as a citizen over 18 who shall have been a resident for three months and registered in the election district of his residence. Continued nontransient presence in a district gives rise to a presumption of voter residence under section 150. Subdivision (a) of section 151 refers to the residence of students and the records in both of these appeals in the form of affidavits and the letter of the election commissioner (Oneida County) reveal that its requirements are applied only to students. Consequently, student presence in the district gives rise to a rebuttable presumption of nonresidence which may only be overcome by a strong evidentiary showing. (*Matter of Goodman,* 146 N. Y. 284, 287, and see *Matter of Robbins* v. *Chamberlain,* 297 N. Y. 108, 110.) Thus, the test to qualify all citizens is residence (Election Law, § 150) but for students it is residence " plus " (Election Law, § 151, subd. [a]). Those " plus " requirements violate the Federal statute which states that " no person acting under color of law shall — (A) in determining whether any individual is qualified under State law * * * to vote in any election, apply any standard, practice, or procedure different from [those] * * * applied under such law or laws to other individuals within the same county * * * who have been found by State officials to be qualified to vote " (U. S. Code, tit. 42, § 1971, subd. [a], par. [2]).

The conclusion that the residence of students of voting age must be determined, as for all others, by the provisions of section 150 of the Election Law is also compelled by the clear language of the Twenty-sixth Amendment which provides that the " right of citizens of the United States * * * to vote shall not be * * * abridged * * * by any State on account

of age." Section 151 " abridges "[1] the voting rights of a sub-
stantial portion of citizens between the ages of 18 and 21, the
class for whose benefit the Twenty-sixth Amendment was
adopted. Section 151 casts an onerous procedural burden on
students by forcing them to travel to their parental residence
in order to vote or to hazard the procedural difficulty of casting
an absentee ballot. Section 151 substantively infringes upon
their right to vote insofar as it denies them " a voice in the
election of those who make the laws under which, as good citi-
zens, we must live " (*Wesberry* v. *Sanders,* 376 U. S. 1, 17)
because they may only cast votes in a community in which they
have little interest and to which they have few ties. Section
151 also tends to vitiate the strength of each student's vote.
Since the census determination of the State's Congressional
apportionment (*Evans* v. *Cornman,* 398 U. S. 419, 421) counts
them in the district in which they attend college, they are effec-
tively casting supernumerary votes in their parents' districts.
It is precisely this result and this special burden that Congress
intended to avoid when it enacted the Voting Rights Act of 1970
(1971 U. S. Code Cong. & Admin. News, pp. 374–375).

Foremost among political rights is the right to vote. It is
the essential element in any definition of political equality in
a democracy. In *Reynolds* v. *Sims* (377 U. S. 533, 561, 562) the
Supreme Court characterized the right to vote as " one of the
basic civil rights of man " and went on to state that: " since
the right to exercise the franchise in a free and unimpaired
manner is preservative of other basic civil and political rights,
any alleged infringement of the right of citizens to vote must
be carefully and meticulously scrutinized." Because section
151 distinguishes between students and other citizens in regis-
tering and voting, it thus abridges a fundamental right and the
State must demonstrate a compelling State interest in order
to justify it (*Kramer* v. *Union School Dist.,* 395 U. S. 621). It
is not necessary for petitioners to prove an absolute denial of
their right to vote; they need merely show that a heavy pro-
cedural burden is imposed on such right in order to require
the State to show a compelling interest (*Williams* v. *Rhodes,*
393 U. S. 23, 30–31; *Lane* v. *Wilson,* 307 U. S. 268, 275). No
such compelling interest has been shown in the record before
us on these appeals.

---

1. Abridges is defined as diminishes, curtails, reduces, in Webster's New Inter-
national Dictionary (3d ed. 1961).

The present three months' residency requirement and the 30-day mandatory interval between close of registration and the election provide sufficient safeguards to prevent fraud. The State could constitutionally require an affidavit of an intent to reside within the district and a sworn statement of nonregistration elsewhere. A rational basis exists for the imposition of this type of burden which is so slight as not to offend due process guarantees (*Carrington* v. *Rash*, 380 U. S. 89). Students may not be " fenced out " on the grounds that the State has a compelling interest in promoting a concerned and interested electorate (*Kramer* v. *Union School Dist.*, supra, p. 632; *Evans* v. *Cornman*, 398 U. S. 419, 424, supra). Students have as many ties within the community as those found by the Supreme Court in *Phoenix* v. *Kolodziejski* (399 U. S. 204, 210). They are included in the census determination of the State's Congressional apportionment (*Evans* v. *Cornman*, supra, p. 421). The United States Bureau of the Census enumeration of college students as residents of their college communities augments the communities' share of State and Federal financial aid since the allocation is on a per capita basis. Students pay State and local taxes. The right to vote must mean the right to have " a voice in the election of those who make the laws under which, as good citizens, we must live." (*Wesberry* v. *Sanders*, 376 U. S. 1, quoted in *Williams* v. *Rhodes*, 393 U. S. 23, 31). It seems singularly inappropriate for the State to benefit from the residency of the students for some purposes, impose substantial obligations of citizenship upon them, and then deny them the correlative right to have a voice in defining the nature and extent of such obligations (*Cornman* v. *Dawson*, 295 F. Supp. 654, 659, affd. *sub nom. Evans* v. *Cornman*, 398 U. S. 419).

Further, a statute which purports to regulate a fundamental right violates due process guarantees if it is unduly vague or gives local officials unfettered discretion (*Kunz* v. *New York*, 340 U. S. 290). Subdivision (a) of section 151 of the Election Law sets forth numerous criteria which may be considered and vests the election board with such broad and unfettered discretion as to which, if any, it will consider in determining an applicant's right to register and vote as to make impossible the fair and equal administration of its provisions. It should be stricken as violative of the Fourteenth and Twenty-sixth Amendments to the United States Constitution.

Other courts have reached similar conclusions: *Wilkins* v. *Bentley* (385 Mich. 670); *Jolicoeur* v. *Mihaly* (5 Cal. 3d 565); *Johnson* v. *Darrall* (337 F. Supp. 138 [S. D. Ind., decided Oct.

27, 1971]); *Anderson* v. *Brown* (332 F. Supp. 1195 [3-Judge court, S. D. Ohio, decided Oct. 15, 1971]); *Ownby* v. *Dies* (337 F. Supp. 38 [E. D. Texas, decided Sept. 28, 1971]); *Fair* v. *Osser* (E. D. Pa., decided Sept. 27, 1971); *Kennedy* v. *Meskill* (D. Conn., decided Sept. 13, 1971).[2]

Federal constitutional and statutory provisions mandate that students be treated no differently from other citizens. Special requirements, forms and proof should not be required. A citizen's right to vote may not be obliterated by laws, like section 151 of the Election Law, which leave this cherished right to the whim of the individual election official (*Louisiana* v. *United States*, 380 U. S. 145).

The determinations at Special Term should be reversed, section 151 of the Election Law declared unconstitutional, and respondents directed to register petitioners to vote.

MARSH, J. P., WITMER and MOULE, JJ., concur with GABRIELLI, J.; CARDAMONE, J., dissents and votes to reverse the orders and grant the petitions in accordance with his dissenting opinion.

Orders affirmed, without costs.

2. The Attorneys General of the following States have also taken the constitutional position presented in this dissenting opinion: Florida (Opn. No. 071-202, Aug. 3, 1971); Georgia (Aug. 20, 1971); Illinois (File No. S-335, Sept. 29, 1971); Kansas (Oct. 13, 1971); Louisiana (Aug. 2, 1971); Massachusetts (Opn. 71/72-3, July 21, 1971); Nevada (Opn. No. 48, Oct. 20, 1971); Oregon (Opn. No. 6870, Oct. 20, 1971); Pennsylvania (Sept. 9, 1971).