In the Matter of the Application of OSCAR H. GOODMAN, Respondent, to Strike from the Registry of Voters the Name of HENRY W. BAINTON, Appellant.

Under the provision of the act of 1894, amending the Election Law (§ 37, chap. 275, Laws of 1894), which authorizes the cancellation of names on registry lists, a judge at Chambers has the right to strike from a registry list the name of a person not qualified as a voter in the election district, or who cannot become so qualified before the election.

It seems, however, the provision does not apply to a case of doubt, where there is a dispute about the facts, or ground for differing inferences, but only where the facts show affirmatively that the person is not and cannot become qualified.

Where a person residing in one election district of a city removes to, takes and occupies a room in a seminary of learning in another district, as a student, and not permanently as a residence, he neither loses his residence nor gains a new residence in the seminary district by the removal, and is lawfully entitled to vote in the former district, not the latter.

While the voter may change his legal residence into a new district in spite of the fact that he becomes a student in an institution of learning therein, presumably his occupation of rooms in the institution is only during the prescribed period of study, and so, such occupation is no evidence of a change of residence, but the facts to establish the change must be wholly independent of his presence in the new district as a student, and, it seems, should be clear and convincing to overcome the natural presumption.

It seems, also, that a verified statement of the voter of a mental intention to change his residence is not, unless fortified by consistent acts, sufficient to overcome such presumption.

(Submitted May 20, 1895; decided May 28, 1895.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made January 18, 1895,

which affirmed an order of Special Term striking from the list or registry of voters in the twenty-fifth election district of the twenty-first assembly district in the city of New York the name of Henry W. Bainton.

The application was made under section 37 of chapter 275 of the Laws of 1894, which provides for the addition and cancellation of names on the registry lists. The affidavit of the applicant, after stating that he was an elector of the twenty-fifth election district of the twenty-first assembly district of the city of New York, and had duly registered as a voter for the election of 1894, alleged that Henry W. Bainton had registered in said district from No. 41 East Sixty-ninth street, in said city, as a residence; that said number is a seminary of learning, known as the Union Theological Seminary, in which said Bainton is a student, and is not a resident of said district; that his name appeared in the catalogue of said theological seminary for 1893 and 1894 as a student of the junior class, his residence being given as New York city and his room 1 South Hall. The affidavit of Bainton in opposition to said motion stated that he was born in the city of New York in 1863, and had always resided in said city; that his father lived on the corner of Sixty-ninth street and Western boulevard until his death in 1890, and that since then the house has been demolished; that deponent had not resided with his father since 1883; that from 1884 to 1891 he had traveled in the West; that in 1891 he entered the junior class of Columbia College; that while there he boarded by the week in various places, and in December, 1892, roomed at No. 7 West Eighty-fourth street, remaining there until September, 1893, when he gave up his room and removed his effects to No. 41 East Sixty-ninth street, where he has since resided. Deponent further stated that he had no residence elsewhere, and that there was no other place in New York city he could claim as a residence; that he had no intention of changing his residence and came there for the purpose of obtaining a residence and domicile, being employed at a salary in mission work for the Park Presbyterian Church of said city.

*James A. Blanchard* and *Thomas F. Wentworth* for appellant. The language of section 3, article 2 of the Constitution places no restriction or limit upon a student's right to acquire a residence at any place where any other citizen not a student might acquire such residence. (*Silvey* v. *Lindsay*, 107 N. Y. 61; Laws of 1892, chap. 680, §§ 35, 36, 110, 111; *People* v. *Holden*, 28 Cal. 137; *Sanders* v. *Getchell*, 76 Maine, 165; *Woods* v. *Fitzgerald*, 3 Oreg. 568; *Darragh* v. *Bird*, Id. 221; *Hunt* v. *Richards*, 4 Kans. 216; *Putnam* v. *Johnson*, 10 Mass. 487; *In re Ward*, 29 Abb. [N. C.] 187; *Cerry* v. *Wilcox*, 62 N. W. Rep. 249.) The name of the appellant could not be stricken from the registry of voters in a summary proceeding before a judge at Chambers. (Laws of 1892, chap. 680, §§ 36, 110, 111; *People* v. *Pease*, 27 N. Y. 45; *People* v. *Stapleton*, 119 id. 175; *Goetcheus* v. *Matthewson*, 61 id. 420; *People* v. *Smith*, 10 Misc. Rep. 100; Laws of 1894, chap. 275, § 37; *In re Hamilton*, 80 Hun, 511; *People* v. *Bell*, 119 N. Y. 189.)

*Charles H. Knox* and *Louis H. Hahlo* for respondent. The order should be affirmed. (Laws of 1894, chap. 275, § 37; Const. N. Y. art. 2, § 3; *Silvey* v. *Lindsay*, 107 N. Y. 55; *People* v. *Cady*, 143 id. 100; *U. S.* v. *U. P. R. R. Co.*, 91 U. S. 72.)

FINCH, J. It is objected to this appeal that the question involved has become purely abstract, since the election has passed for which the intending voter registered, and restoring his name to the registry from which it was removed would be an idle ceremony without the least practical result. But the incident is of a recurring character, and likely to occasion a repeated denial of the asserted right, and the point in dispute is one of public interest, and requiring official action which needs some degree of direction in view of expressed differences of opinion.

It is conceded by the respondent that the intending voter was a resident of the state and of the county, and entitled to

vote at the election. What is denied is that he acquired any right to vote in the election district in which the seminary which he entered and in which he took rooms was situated. It is admitted that he could have lawfully registered from 84th street, which was his last residence prior to his removal to the seminary, but in a different election district, and would have been a qualified voter there: the precise contention being that he did not lose his residence there by removing to the seminary, nor gain a new residence in the seminary district by his presence in it as a student. I think that is a correct construction. It does not disfranchise the voter, but determines the place where he may lawfully vote. In the case of *Silvey* v. *Lindsay* (107 N. Y. 55) we held that the removal to the Soldiers' Home at Bath by one whose legal residence was in New York did not on the one hand give him a new voting residence at Bath, nor on the other deprive him of his old voting residence in New York. We said he could go back there and vote and was to be regarded as temporarily absent therefrom. Here the presence of Bainton in the seminary was as a student, and for the purposes of a student only, and by that removal he neither gained a new residence in the seminary district nor lost his prior one in the 84th street district. He could have registered in the latter and voted at its poll, and if challenged could have taken the oath that he was a resident of that district, as he legally remained, although having no actual abode in it. He could lose such residence, of course, but did not do so by the mere fact of taking rooms in the seminary as a student.

We do not mean to say that a voter may not change his legal residence into a new district in spite of the fact that he becomes a student in an institution of learning therein, but the facts to establish such a change must be wholly independent and outside of his presence in the new district as a student, and should be very clear and convincing to overcome the natural presumption. In the present case there were no such facts. Presumably rooms in the seminary rented to students are to be occupied only during the prescribed period of study,

and not permanently as a residence, and there was nothing before the court to show any change of residence beyond the temporary presence at the institution for such period of study. This construction obeys literally the constitutional mandate, and does not necessarily disfranchise a single citizen. It merely recognizes and applies the admitted truth, acted upon at every election, that the voting residence may be in one place and the actual abode in another. Usually, perhaps always, the voting residence remains unchanged until a new residence is actually acquired, but there can be no such acquisition merely by an abode as a student in an institution of learning. Something else, beyond that fact and wholly independent of it, must occur to effect the change. ( The intention to change is not alone sufficient.) It must exist, but must concur with and be manifested by resultant acts which are independent of the presence as a student in the new locality. It is only in quite exceptional cases that such a result could be reached, and nothing in the one before us takes the situation out of the constitutional rule.

The dissenting opinion in the General Term, in another case, which has been put before us by the appellant, is in entire accord with this view except at a single point. It argues that one who is qualified as a voter by residence in the state and in the county may change his election district to one where he attends an institution of learning. I agree to that possibility, which I deem somewhat exceptional, but I am unable to say that where the new abode is occasioned and explainable by, and referable to the presence as a student, without any independent facts showing a change of residence, not only intended but accomplished wholly outside of the student character, the new residence in the new district is acquired, because it is a change of residence merely from one district to another. In such a case I think the old residence remains, and is not lost until, after the temporary sojourn as a student, a new residence is acquired. The exact difference of opinion seems to be only this, that the dissenting judge thought there were such independent facts, while in the present case, at least, we

are unable to see any. The effort to establish any such change will usually prove to be difficult, and may easily become perilous.

A further point is made over the right of a judge at Chambers to strike names from the registry. Such right is given by the amendment of 1894 (Chap. 275, § 37), where the name of a person not qualified in the election district or who cannot become so qualified before the election appears upon the lists. This provision applies, not to a case of doubt, not to one resting in some uncertainty or dependent upon inferences of a debatable character, but to a case in which the facts show affirmatively that the intending voter is not and cannot become qualified. If there is dispute about the facts or ground for differing inferences, the judge should not intervene, but leave the voter to swear in his vote at his peril, taking upon himself the risk of his persistence. Where, however, as in this case, there is no dispute about the facts, and they admit of but one inference, the judge may order a name to be removed. Here there was no possible element of uncertainty unless it lay in the hidden mental intention of Bainton to take up a residence at the seminary independently of his presence there as a student. He is very careful not to swear to any such intention. He obviously confuses residence with place of abode, and then swears that he has no other than the seminary and intends to make that his residence. What he says is consistent with the tenor of his concurrent acts, which indicate nothing more than a purpose to abide in the seminary rooms for the temporary sojourn of a student. The legal and natural inference from his act is not even rebutted by an asserted independent and extrinsic intention. Indeed, if some such mental purpose had been averred it would hardly have raised a sufficient doubt unless fortified by consistent acts, for the secret thought, known only to the individual, can rarely come under legal investigation or be subjected to any test, unless by reference to the acts which manifest it and are occasioned by it. The voter who relies wholly upon that undisclosed mental intention to outweigh obvious inferences from

his act puts himself in an unsafe position. I understand the appellant to concede the validity of the act of 1894 as thus construed, and there is no just reason for a denial of its validity and operative force.

The order should be affirmed, with costs.

All concur.

Order affirmed.