In the Matter of the Application of AUGUST MERRILL, Appellant, to Strike from the List or Registry of Voters of the Third Election District of the Eleventh Ward of the City of Utica, New York, the Names of JOSEPH A. BRIDGEMEN and Others, Respondents.

Fourth Department, May 1, 1918.

**Election Law — when inmate of home for aged men is entitled to register therefrom as voting residence — Election Law, section 163, and Constitution, article 2, section 3, construed.**

An inmate of a home for aged men situated in an election district in the city of Utica, which institution, though originally founded by charitable gifts, is now self-supporting with the exception that it occasionally receives voluntary contributions from outsiders, is entitled to register as a resident of such institution and to vote as such resident where he has claimed such residence as a voting domicile for many years.

The fact that such institution is empowered to take and administer gifts made to it does not make it a charitable institution within the meaning of section 163 of the Election Law and section 3 of article 2 of the State Constitution.

Moreover, said statute and the constitutional inhibition of which it is a re-enactment do not seek to disqualify any person from the voting privilege. They merely declare that he shall not be deemed to have gained or lost a residence while kept in an institution wholly or partially supported by public expense or by charity.

APPEAL by the petitioner, August Merrill, from an order of the Supreme Court, made at the Oneida Special Term and entered in the office of the clerk of the county of Oneida on the 8th day of April, 1917, denying his application.

*Clarence E. Williams*, for the appellant.

*Theodore L. Cross*, for the respondents.

LAMBERT, J.:

This proceeding is instituted under the statute by one August Merrill to strike from the registration list of the third election district of the eleventh ward of the city of Utica the names of one Bridgemen and others. The proceeding is instituted pursuant to section 153 of the Election Law

(Consol. Laws, chap. 17 [Laws of 1909, chap. 22], as amd. by Laws of 1916, chap. 537).* The theory of the application is that the defendants named are not qualified voters of such election district, for the reason that they are inmates of the " Home for Aged Men and Couples," located in said district; and that said home is supported wholly or in part by charity, within the meaning of section 163 of the Election Law † and section 3 of article 2 of the Constitution of the State of New York, as amended in 1894 to take effect on January 1, 1895.

The statutory provision is but a re-enactment of the constitutional provision. That constitutional provision reads as follows: " For the purpose of voting, no person shall be deemed to have gained or lost a residence　*　*　*　while kept at any　*　*　*　institution wholly or partly supported at public expense or by charity."

Determination of the application of the above-quoted provision involves examination of the history of the maintenance of this home. In 1882 some twenty-eight ladies of Utica and vicinity formed a corporation. The certificate states the object and business of that association to be the protection, assistance and support, wholly or in part, of respectable, aged, indigent or infirm men, who are unable to support themselves without assistance.

By suitable provisions of constitution and by-laws the organization provides that applicants for admission must pay $300 as an admission or entrance fee, and in addition thereto shall convey and transfer to the corporation all their property, as well as all property of every description which they may thereafter acquire while a beneficiary of said home. Applicants are admitted upon three months' probation. And in case of aged couples, both husband and wife are admitted upon like terms, upon payment of $600.

At the end of the probation period the application is either accepted or rejected. In case of rejection the entrance fee is returned, less a suitable maintenance charge for that term.

Enforcement of reasonable regulations is insured by contract providing for the loss of benefits or expulsion of the bene-

* Since amd. by Laws of 1917, chap. 703. — [REP.
† Since amd. by Laws of 1918, chap. 323.— [REP

ficiary and his loss of such sums as may have been paid over to the institution.

It appears that the corporation has the right to and has from time to time received gifts from various sources, and it has never in its history and does not now participate in any public support. It is not subject to visitation by State authorities. Its inmates are not under legal restraint, and are free to terminate the relationship at will.

Despite the fact that the institution has received gifts at various times, and from various sources, it satisfactorily appears that it has sufficient income for its maintenance, and is wholly independent of any gift or voluntary contribution of outsiders. Its maintenance is largely assured by the funds and property of the inmates and from gifts made in the past.

The language of the Constitution above quoted seems clear in its purport and clearly makes a distinction between " public expense " and " charity." In other words, an institution wholly or partly supported by private charity as distinguished from public expense would clearly be within its scope. This idea is accented by the fact that the amendment of 1894 added the words " or by charity."

Does the fact, therefore, that in the past various persons have seen fit to bestow gifts or endowments upon this organization make it an object of charity within the meaning of this provision? The fact that it is empowered to and does take and administer gifts of that character, or that it has in the past, does not necessarily make it a charitable institution within the meaning of the constitutional provision. (*People ex rel. Board of Charities* v. *N. Y. Society P. C. C.*, 161 N. Y. 233.)

And this is necessarily so, for many colleges and educational institutions likewise receive and administer such gifts, and yet are scarcely to be classed as institutions maintained by charity in any degree.

The transactions involved in admission to the institution seem to more closely correspond with a contract between individuals to provide support and maintenance for a compensation. The entrance into that relationship is wholly voluntary. Its continuance is for the will of both parties. Inmates cannot be confined by force, and the continuance of the

relationship is thus made largely dependent upon proper administration.

It will further be observed that the constitutional inhibition does not seek to disqualify any person from the voting privilege. It merely declared that he shall not be deemed to have gained or lost a residence while kept at any such institution. Clearly, therefore, these inmates have a voting residence either at Utica or at their previous domicile. It is of course true that residence is largely a matter of intention, but, as was said in *Matter of Barry* (164 N. Y. 21), " the mere intention to change his residence would not suffice."

In other words, that intention must be evidenced by acts demonstrating the *bona fides* of such intention. These men could by appropriate conduct acquire a voting residence in Utica. They could also by appropriate conduct retain their voting residence elsewhere. Either course would not offend the constitutional provision.

The question here is which have they done.

For a number of years these men have been voting in this election district, claiming their residence at this home. They have not been voting elsewhere, nor have they lived elsewhere. They have purchased their right to reside in this institution, and by their voluntary acts have continued that relationship.

Such conduct certainly leads to the conclusion of residence at this home. A voting residence must, in the first place, be initiated by the intention of the voter. We have that element present in this case. Evidential of such intention is the loss of a voting residence elsewhere, subjection to jury duty and taxation in the locality of adopted residence. These functions of citizenship when united with intentions make a voting residence. This institution is all the residence they have. They have permanently abandoned every other domicile. Under such circumstances, there seems to be nothing in the provisions of the Constitution or statute prohibiting such voting residence.

In *Matter of Goodman* (146 N. Y. 284) it is said: " The provision does not apply to a case of doubt, where there is a dispute about the facts, or ground for differing inferences, but only where the facts show affirmatively that the person is not and cannot become qualified."

And the same doctrine was announced in *Silvey* v. *Lindsay* (107 N. Y. 60). The institution there involved is clearly within the constitutional provisions, yet the court said: " But the question in each case is still as it was before the adoption of the Constitution, one of domicil or residence, to be decided upon all the circumstances of the case. The provision (Art. 2, § 3) disqualifies no one; confers no right upon any one. It merely eliminates from those circumstances the fact of presence in the institution named or included within its terms."

Applying these doctrines to the facts in this record, the conclusion seems compelled that these men have a voting residence at this home, and have a right to continue their practice of many years past, of voting from that domicile.

All concurred.

Order affirmed, with ten dollars costs and disbursements.

