In the Matter of the Application of PEARL MILLER, Appellant, for an Order Directing MARY TRINNER and Others, as Inspectors of Election in and for the Thirteenth Election District of the Sixth Assembly District of the County of New York, Respondents, to Strike from the Register of Said Election District the Names and Registrations of Certain Named Persons Referred to as Inmates of St. Francis' Home.

In the Matter of the Application of FLORA FISHMAN, Appellant, for an Order Directing ALEX ELKIN and Others, as Inspectors of Election of the Twelfth Election District of the Sixth Assembly District of the County of New York, Respondents, to Strike from the Register of Said Election District the Names and Registrations of Certain Persons Registered from St. Francis' Home.

First Department, November 2, 1928.

*A. S. Gilbert* of counsel [*Alfred C. Coxe* with him on the brief; *Leonard J. Obermeier*, attorneys], for the appellants.

*Edward S. Dore* of counsel [*Isaac Ringel* and *Francis X. Dineen* with him on the brief], for the respondents.

MARTIN, J. The petitioners herein, upon affidavits stated to be on information and belief, have applied to the court to strike from the registration list the names of sixty-eight people who have registered from St. Francis' Home located in the sixth Assembly district in the borough of Manhattan of the city of New York.

The application is said to be based on the ground that these registrants were inmates of an almshouse, asylum or institution wholly or partly supported by charity, and as such, not entitled to register and vote under article 2, section 3, of the Constitution of the State of New York, and section 151 of the Election Law.

The motion papers upon which this application was made, based upon information and belief, without other evidence showing any grounds therefor, were clearly insufficient upon which to base an order to strike these names from the registration list. Upon this ground alone, the orders appealed from should be affirmed. We have determined, however, to pass upon the question of law involved.

Article 2, section 3, of the Constitution of the State of New York provides as follows: " For the purpose of voting, no person shall be deemed to have gained or lost a residence, by reason of his presence or absence, while employed in the service of the United States; nor while engaged in the navigation of the waters of this State, or of the United States, or of the high seas; nor while a student of any seminary of learning; nor while kept at any almshouse, *or other asylum, or institution wholly or partly supported at public expense or by charity;* nor while confined in any public prison." (Italics ours.)

Section 151 of the Election Law is to the same effect.

In answer to the affidavits of the petitioners nearly all of the respondents have filed affidavits based on knowledge. A large number· of these affidavits set forth the payments made by affiants for their maintenance and support, and show that the institution known as St. Francis' Home is not an almshouse, nor an asylum, nor wholly or partly supported by charity. The affiants have not left the question in doubt. They have set forth facts to establish their right to register and vote.

In *Matter of Goodman* (146 N. Y. 284) the court held: " The provision does not apply to a case of doubt, where there is a dispute about the facts, or ground for differing inferences, but only where the facts show affirmatively that the person is not and cannot become qualified."

By their affidavits the respondents also show that they are not dependent on charity nor are they kept in an institution wholly or partly supported at public expense. They positively state that no public funds are used for the support of either the institution

or the people who reside therein. The institution does not appear to be a charitable institution as that term is generally understood. (*Silvey* v. *Lindsay*, 107 N. Y. 55, 59.) It is admitted that it receives contributions similar to gifts made to maintain many welfare organizations, colleges and other institutions of learning. Many of those desiring to reside within its walls, who are not employed therein, either pay for their support or contribute to the support of the institution.

A great number of these people have lived in this home for years and have paid substantial sums of money upon their entrance thereto, while others pay weekly or monthly rates. They are not relying on the charity of others.

The Constitution and statute contemplate instances where individuals are the objects of charity and kept in charitable institutions, but it was never intended thereby to deprive citizens of the right to vote because they saw fit to reside permanently in an institution, while paying for their support and maintenance.

In *Matter of Merrill* (183 App. Div. 216, 218) the Appellate Division of the Fourth Department, writing in a similar case, said:

" It appears that the corporation has the right to and has from time to time received gifts from various sources, and it has never in its history and does not now participate in any public support. It is not subject to visitation by State authorities. Its inmates are not under legal restraint, and are free to terminate the relationship at will.

" Despite the fact that the institution has received gifts at various times, and from various sources, it satisfactorily appears that it has sufficient income for its maintenance, and is wholly independent of any gift or voluntary contribution of outsiders. Its maintenance is largely assured by the funds and property of the inmates and from gifts made in the past.

" The language of the Constitution above quoted seems clear in its purport and clearly makes a distinction between ' public expense ' and ' charity.' In other words, an institution wholly or partly supported by private charity as distinguished from public expense would clearly be within its scope. This idea is accented by the fact that the amendment of 1894 added the words ' or by charity.'

" Does the fact, therefore, that in the past various persons have seen fit to bestow gifts or endowments upon this organization make it an object of charity within the meaning of this provision? The fact that it is empowered to and does take and administer gifts of that character, or that it has in the past, does not necessarily make it a charitable institution within the meaning of the con-

stitutional provision. (*People ex rel. Board of Charities* v. *N. Y. Society P. C. C.;* 161 N. Y. 233.)

" And this is necessarily so, for many colleges and educational institutions likewise receive and administer such gifts, and yet are scarcely to be classed as institutions maintained by charity in any degree."

In that case it was held that the inmates of a home for aged men situated in an election district in the city of Utica were entitled to register from such institution and to vote.

In several instances the respondents have lived in St. Francis' Home for years; they have no other place of residence and are entitled, upon showing that this institution is their home and place of residence, to register and vote therefrom.

Counsel for the appellants admits it is now too late to reconvene the board of inspectors, but has requested an expression of opinion as a guide to future action. The appellants have a right to such a determination even though too late to affect the status of the respondents. (*Matter of Goodman,* 146 N. Y. 284.)

We are of the opinion that the appellants failed to sustain the allegations of the petition, and that the respondents were entitled to register and should be permitted to vote.

The orders should, therefore, be affirmed.

DOWLING, P. J., concurs.

McAvoY, J. (concurring). The constitutional provision declares that for the purpose of voting no person shall be deemed to have gained or lost a residence while kept at an institution wholly or partly supported at public expense or by charity. The rule of residence set forth relates, as it shows in context, solely to persons kept (that is maintained freely or partly so) at charitable institutions. This does not preclude the acquiring of the necessary voting residence in such institution by acts evidencing an intent to so acquire a residence there other than by mere presence, such as abandonment of former domicile whether of origin or latterly acquired; purchase of a permanent right to live at the home or institution; contribution of services or funds as a consideration for support therein for life or some stated period. Proof of such facts here justifies a conclusion that a residence has been acquired apart from the evidence of mere internment in the institution.

The orders should be affirmed.

FINCH and O'MALLEY, JJ., concur.

In each proceeding: Order affirmed.