In the Matter of BERNARD HOFFMAN, Petitioner, against JOHN BACHMAN et al., as Commissioners of Election of Onondaga County, Respondents.

Supreme Court, Special Term, Onondaga County, October 10, 1946.

*Richard T. Mosher* for petitioner.

*Charles T. Major, County Attorney* (*Donald Meade* of counsel), for respondents.

SEARL, J. This is the return of an order to show cause as to why an order should not be made compelling and directing the Inspectors of Election of the Fourth Election District of the Sixteenth Ward of the City of Syracuse to add to the register of voters of the district the name Bernard Hoffman.

The petition of Bernard Hoffman alleges that he is upwards of twenty-one years of age, an American citizen, that he has

resided in the State of New York upwards of one year, in the county of Onondaga upwards of four months, and in the election district upwards of thirty days. It further sets forth that he is duly qualified to register for the general election to take place on November 5, 1946. Petitioner then states that he requested Edward A. Levy, an inspector of election, to place petitioner's name upon the list of qualified voters in the district. An attached affidavit sets forth that Hoffman stated he was a student and he was told to " go to the Board of Elections at the Court House and get a ruling."

The answer of the chairman of the election inspectors of the district, among other allegations, sets forth that on October 4, 1946, Bernard Hoffman, together with certain individuals and a photographer, appeared at the place of registration and requested to be registered. Hoffman, according to the answer, stated he was a student, that his address was " 746 South Crouse Avenue ", one of the university homes, but that Hoffman stated his home was " Brooklyn, New York ".

Upon conclusion of argument of respective counsel, the court stated that not only would a decision be rendered relating to the instant application, but that some formula would be presented that might be an aid to other students as to their right to register and vote at the coming election.

Considering these matters in the order mentioned, the court finds that when the inspectors directed the petitioner to go the Board of Elections at the courthouse, such direction amounted to a challenge of petitioner's application for registration. If any inspector " shall have reason to suspect that the applicant is not entitled to be registered " the applicant may be challenged. (Election Law, § 169, subd. 1.)

However, subdivision 2 of the aforesaid section directs that " When " an applicant is so challenged the chairman or any inspector " shall administer to such applicant the following oath: " (to " true answers make to the questions touching * * * qualifications "). The applicant is then required to sign the challenge affidavit. Other requirements follow.

Subdivision 3 provides that if the applicant " shall by his answers, satisfy a majority of the board of inspectors * * * of his right to be registered, they shall register his name as a voter; if not, they shall point out to him the qualifications which he lacks as a voter and shall not register his name except by order of a court or judge of competent jurisdiction."

The form of the challenge affidavit, containing thirty-four questions to be answered by the applicant touching alleged quali-

fications for registration, is set forth in section 170 of the Law.

In this case it is conceded that neither did the inspectors administer to petitioner the oath, nor was any challenge affidavit made out or signed, nor did the Board of Inspectors point out to petitioner the qualifications lacking by his answers, all as required by section 169 (subds. 2, 3) of the Election Law. These steps are all prerequisites to registration or a denial thereof. The court has no basis to grant the relief demanded. No answers, as required by law, are before the court from which the court could now make a determination. The petitioner may appear before the Board of Inspectors on either October 11th or 12th, the remaining registration days, when the inspectors shall act upon petitioner's application for registration, and then comply with the requirements of the Election Law (§ 169, subds. 1, 2, 3). In event the Board of Inspectors denies registration, the petitioner may reapply to this court without prejudice.

We now approach the broader and more difficult task of presenting to the petitioner and other students a formula or pattern for their guidance in the matter of registration or voting. Of necessity, such an attempt must be inadequate and fall far short of being uniform as to all cases. It may, however, be somewhat informative and helpful to the great mass of students, many of whom have recently returned from military or naval service.

The Constitution of the State of New York (art. II, § 1), provides: " Every citizen of the age of twenty-one years, who shall have been a citizen for ninety days, and an inhabitant of this state for one year next preceding an election, and for the last four months a resident of the county * * * and for the last thirty days a resident of the election district in which he or she may offer his or her vote, shall be entitled to vote at such election in the election district of which he or she shall at the time be a resident, and not elsewhere * * *."

The Constitution further provides (art. II, § 4): " For the purpose of voting, no person shall be deemed to have gained or lost a residence, by reason of his presence or absence, while employed in the service of the United States; * * * nor while a student of any seminary of learning * * *."

The State Legislature has incorporated in the Election Law (§ 151) substantially the same provision relative to students as is above quoted from the State Constitution.

The Legislature has the power to amend the Election Law. However, the restriction as contained in the State Constitution could only be removed by vote of the people on amendment.

This provision in the Constitution can in no way be changed by the courts. It can only be interpreted. Therefore, we must look first to any decisions of our State court of last resort, our Court of Appeals. Various decisions have been handed down over the years. (*Matter of Goodman,* 146 N. Y. 284 [1895]; *Matter of Garvey,* 147 N. Y. 117 [1895]; *Matter of Barry,* 164 N. Y. 18 [1900]; *Matter of Blankford,* 241 N. Y. 180 [1925]; *Matter of Watermeyer* v. *Mitchell,* 275 N. Y. 73 [1937]).

In the *Goodman* case (*supra*) a student occupied a room in a seminary and took oath that he intended to make the seminary his residence. The court held that his statement of intention alone was insufficient unless fortified by consistent facts.

The *Garvey* decision (*supra*) related to several students who claimed voting residence at a theological seminary located in New York City. One John Barry, a student, was held to have a legal residence at the seminary as he convinced the court by proof that he had moved to New York from Virginia. He introduced certain letters indicating that he had abandoned his residence in Virginia and was making New York his home. The court recognized his residence as New York, saying (p. 121) " We think Barry's case clearly discloses the intent to change his legal residence by acts· which were independent of his presence as a student in the seminary   *   *   *.''

Looking at the *Blankford* case (*supra*) we find Judge CARDOZO held that although the seventeen petitioners, students at a seminary, had renounced their former homes, they did not prove that they intended " to reside indefinitely " at Hyde Park " or maintain it as their home irrespective of their presence as students in the seminary ". The court stated (p. 183): " There must be evidence that irrespective of residence, present or expected, in a seminary of learning, the place in which the seminary is located has been adopted as a home   *   *   *.''

The last pertinent decision of our court of last resort is the *Watermeyer* case (*supra*). The petition indicated that Watermeyer resided in a dormitory at Columbia University. He was taking but a single course at the university, in physics, and he devoted most of his time as a teacher at Brooklyn College. Still, the court held that he was a student within the meaning of the law and that he could not properly be registered. The decision was by a divided court.

It will be noted that the case last referred to was decided in 1937. It can in no wise be argued that the exigencies created by the late war or the almost total lack of adequate housing facilities alter our constitutional mandate. Still, a decision of the

Appellate Division, handed down in 1944, *Matter of Seld (Seigfred)* (268 App. Div. 235), in this, our Fourth Department, differentiates the former decision of our Court of Appeals in the *Watermeyer* case (*supra*). Arthur Seld was an officer in the naval service, employed at the Sampson Naval Base. He was married and returned each night to Seneca Falls where he resided with his wife. She was in the meantime teaching school in Seneca Falls. They were denied the right of registration. However, the Appellate Division, on appeal from the County Court decision, reversed the ruling of the lower court, distinguished the case from former decisions of the Court of Appeals, and ordered the petitioners' names to be registered.

The text of this decision gives to the present-day student, seeking to exercise the right of franchise, some light as to what facts may aid in support of an honest claim that a student intends to make Onondaga County his home. The petitioners proved that they maintained a bank account in Seneca Falls, that their car was registered from that address; war bonds were also purchased from the same address.

In the situation at Syracuse University, very likely some returned veterans are married, and have brought wives and children to Syracuse. It may be that they have an honest intention of making Onondaga County their permanent home; and that independent facts would substantiate a finding that in all probability this would continue to be their home, even after the period of student scholarship had terminated.

In passing it may be noted, so far as the rights of the wife of a student are concerned, that section 61 (Domestic Relations Law) provides: " The domicile of a married woman shall be established by the same facts and rules of law as that of any other person for the purpose of voting and office-holding.''

Students must be considered in the same category as persons in the service of the United States. The Constitution and Election Law apply equally to both.

In this instance, residence and domicile have the same meaning. Reduced to simple language, the test is: Where is the student's home? He does not gain that home nor lose it because he is a student. When he comes from another part of the State or Nation, the presumption is that he has left his home for the time being and is on a temporary sojourn as a student. That is the established law over the years. That presumption, however, may be overcome, if facts and his conduct manifest that he has, for the required time, actually made his home in the college town where he seeks to be registered.

The present situation at Syracuse University has no precedent. Normal registration is practically doubled, affording to the discharged service man an opportunity to obtain the education that demands of war either interrupted or took away. Hundreds, if not thousands of servicemen are here with wives or families doing the best they can to preserve at least the semblance of a home.

It is argued with some force that the student must of necessity live in quarters provided by the university; that without the temporary trailer abode, he would have no home at all. True, housing conditions in most instances leave the student no choice. The university authorities have overcome tremendous obstacles. The student who finds himself or family in a trailer may find himself in the dilemma of accepting what is offered, or abandoning his college course. To this argument the answer is sometimes made that an absentee ballot can be obtained from the place of his former residence between June 1st and October 1st.

The argument by a G. I. student that he has offered his life for our country, that he now returns to find he cannot even vote in the country he fought to save, is most compelling. The court can simplify the methods of procedure, yet we all know that judicial decisions cannot emanate from the heart. The demands of our Constitution come first if we are to preserve the form of Government for which that same G. I. has given so much.

In an attempt to aid the student in obtaining a swift and inexpensive decision, in event he or she feels aggrieved with the decision of the Board of Inspectors in any individual case, the court has contacted the chairman of the county committee of each of the two major political parties. Each has agreed to provide an attorney during the hours for registration on October 11th and 12th. The respective attorneys will be in attendance at the Maxwell Hall of Citizenship. In event a student finds it necessary to appeal to the courts from a decision of the Board of Inspectors, the attorneys should provide an expeditious means of obtaining review without expense.

Incidentally, the students will appreciate that the duties of the individual inspectors of election, representing both major political parties, serve long hours with very meager pay. They are confronted with many and complicated problems. Patience will likewise make their row easier.

An order is directed as set forth in the first portion of this memorandum.