Carroll G. Walter, J.
Plaintiffs are statutory tenants of apartments in the apartment building at the southeast corner of Fifth Avenue and 69th Street, known by the street number 875 Fifth Avenue and owned by defendant 877 Fifth Avenue Corporation. As such statutory tenants they are entitled, under existing emergency rent laws, to remain in possession of their respective apartments except under conditions and for reasons specified in the statute. One of the statutory qualifications of their right to remain in possession is that the Temporary State Housing Bent Commission may grant a certificate of eviction in accordance with its rules and regulations; and one of the regulations of the commission is that 6 ‘ In the case of housing accommodations in a structure or premises owned by a cooperative corporation or association, a certificate of eviction shall be issued '* * * to a purchaser of stock or other evidence of interest to possession of such housing accommodations by virtue of a proprietary lease or otherwise where * * * (c) the purchased stock was acquired less than two years prior to the date of filing of the application and on that date stock in the cooperative has been purchased by persons who are then tenants in occupancy of at least 80 percent of the dwelling units in the structure or premises and are entitled by reason of stock ownership to proprietary leases of dwelling units in the structure or premises ” (State Bent and Eviction Begulations, § 55, subd. 3).
Defendants have performed and are performing acts which, at least ostensibly and according to their claims, have resulted or soon will result in making 875 Fifth Avenue a co-operative apartment such as will enable purchasers of the stock of defendant 875 Tenant Corp. to obtain from the commission certificates permitting them to evict plaintiffs from the apartments now occupied by plaintiffs.
Plaintiffs have elected not to exercise the right given them to purchase the stock allocated to their apartments and thus obtain proprietary leases thereof, and they hence fear that such certificates of eviction may be granted, and have brought this action to obtain a declaratory judgment declaring, that the acts performed and about to be performed by defendants have not resulted and will not result in the creation of a true co-operative corporation of such kind as will justify the issuance of such *313 certificates of eviction under the above-mentioned regulation of the commission.
In August, 1953, defendant Pease & Elliman, Inc., called the attention of defendant Frankel to the fact that the building 875 Fifth Avenue was for sale. The stock of 877 Fifth Avenue Corporation, owner of the building, was owned by defendant Wolf son. Negotiations ensued between Frankel and Wolfs on. At first Frankel was negotiating solely on his own behalf. He says that in the course thereof he came to an agreement with a group of tenants of 875 Fifth Avenue and after that he negotiated on behalf of himself and that group.
On September 25, 1953 a written contract was entered into between Wolf son as seller and Central Freeholds, Inc., as purchaser, Central Freeholds, Inc., being a corporation of which Frankel was sole stockholder. By that contract Wolf son agreed to sell and Central Freeholds, Inc., agreed to buy all the issued and outstanding stock of 877 Fifth Avenue Corporation for the book value thereof on December 1, 1953, with the provision that the land and building 875 Fifth Avenue and the furniture and equipment therein were to be taken at $3,566,000. Of the purchase price, $100,000 was paid upon the signing of the contract, $300,000 (more or less, according to whether current assets then exceeded or were then less than current liabilities) was agreed to be paid on December 1, 1953; and for the balance the purchaser was to execute a note calling for the payment of $250,000 on February 1, 1954; $216,000 on April 1, 1954, and 6% of the balance in each year thereafter, the note being secured by a deposit of the stock sold. There was a further agreement that a second mortgage upon the building might be substituted for the note.
A syndicate agreement signed on the same date by four tenants of 875 Fifth Avenue recites their desire to join together for the purpose of acquiring the stock of 877 Fifth Avenue Corporation and organizing a corporation on a co-operative basis, and the designation of Frankel or a corporation of which he is sole stockholder as the nominee of the syndicate, and provides for the accomplishment of such purpose.
On October 8,1953, the four tenants who signed that syndicate agreement addressed a letter to all tenants of the building, advising them that the building was under contract of sale, that they had participated in the negotiations and concluded that it was for the best interests of all tenants to undertake a plan of co-operative ownership, that they had made personal commitments in connection with the purchase, and that there would be made available to all tenants in occupancy an opportunity to *314 purchase their apartments, that Pease & Elliman, Inc. had been requested to prepare a plan of tenant ownership and that such plan would be presented to the tenants in the near future.
On October 15, 1953, defendant 875 Tenant Corp. was incorporated under article 2 of the Stock Corporation Law for the purpose of acquiring 875 Fifth Avenue for the primary purpose of providing homes for its stockholders.
A plan of co-operative organization was then prepared and was sent to all tenants on October 19, 1953. So far as I can see it is, with one possible exception to be hereinafter mentioned, a genuine plan of tenant ownership typical of the many which have become reasonably familiar in New York to the now vanishing generation, stock of the owning corporation being allocated to the individual apartments and the occupants of the apartments being given the right to purchase such stock and get proprietary leases of such apartments.
The plan itself states that each occupant of an apartment had until November 20,1953, to enter into an agreement to purchase the stock allocated to his apartment, and that thereafter the stock allocated to the unsold apartments would be purchased by the underwriters of the plan.
On October 30, 1953, the tenants were advised of an arrangement under which a tenant who subscribed for the purchase of his apartment might thereafter exchange that apartment for a larger or smaller apartment.
On November 11, 1953, the tenants were given additional information regarding the plan.
On November 16, 1953, Central Freeholds, Inc. assigned to 875 Tenant Corp. all its rights under its purchase contract with Wolf son; and the tenants were advised that the plan of co-operative ownership would become effective as of November 20, 1953.
The one respect in which the plan in this case impresses me as possibly different from any which I previously have encountered is its statement that its offer of stock of 875 Tenant Corp. is made only to bona fide residents of the State of New York. As it is not here shown that any plaintiff, or any other tenant of 875 Fifth Avenue, is not a resident of New York, that is, so far as here appears, wholly immaterial; and it possibly is of no real consequence even if some of the tenants be nonresidents.
In any event, with that possible exception, I see in all the foregoing nothing but a legitimate exercise of the legal right to buy and sell property and put the ownership of the property purchased in a form which the purchaser desires and the law allows.
*315 But as the time allowed to plaintiffs for coming to a decision upon the question whether they should or should not purchase the stock necessary to entitle them to proprietary leases of their apartments (November 20, 1953) has now passed and plaintiffs already, by their own election, are in the position in which they either have or have not subjected themselves to the possibility of eviction, a declaratory judgment at this time would be nothing more than a forecast or guess as to what this court thinks the Bent Commission will decide if and when applications for certificates of eviction are made to it by someone to whom plaintiffs have allowed the stock allocated to their apartments to be sold; and for that reason I think that discretion should be exercised in favor of refusing to make any declaration, see Gilliganv. Tishman Realty & Constr. Co. (118 N. Y. S. 2d 570).
Furthermore, the question, in reality, is whether what defendants have created is the thing which the Bent Commission means by “ a cooperative corporation or association ” in a regulation promulgated by it, and I think the commission is the tribunal which should construe its own regulation and decide for itself whether what defendants have created is what the commission means by “ a cooperative corporation or association”, subject, of course, to such judicial review as the law provides. Moreover, the commission, I assume, is not entirely bereft of discretion by its act of promulgating a regulation; and even if applicants for certificates of eviction make out a case which complies literally with some regulation promulgated by the commission, I assume that the commission would yet have the power to say that despite literal compliance the substance of what the applicants show lacks the essential spirit of what the commission intended should be read into its regulation. Discretion, of course, could not be carried to the point of disappointing the just expectations of persons who acted upon the faith of the regulation as written; but I cannot doubt that the commission still has power to construe and apply the regulation in accordance with its spirit.
The phrase, “ a cooperative corporation or association ”, is broad and inconclusive. It is a phrase frequently used in practice but nowhere definitely or precisely defined in statute or judicial decision so far as I am advised; and even if it appeared in the rent statute itself, instead of in a regulation promulgated by the commission, I think the case still would be within the general doctrine that where a statute provides for its administration by an administrative agency questions as to the specific application of broad statutory terms contained in the statute are primarily questions to be decided by that administrative *316 agency and subject to only a limited judicial review. (See Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104, 108; Red Hook Gold Stor. Co. v. Department of Labor, 295 N. Y. 1, 9; Board v. Hearst Pubs., 322 U. S. 111; Rochester Tel. Corp. v. United States, 307 U. S. 125.) As the phrase appears in a regulation instead of in the statute, I think application of that rule is even more imperative.
The complaint accordingly must be and is dismissed, without costs. I direct the entry of judgment accordingly.
The foregoing constitutes the decision required by section 440 of the Civil Practice Act and judgment is to be entered thereon.