Robert W. Cacace, J.
The petitioner herein commenced this proceeding to dispossess the tenant for nonpayment of rent. The tenant, rather than answering the petition, submits an “Affidavit in Opposition”, in which he sets up a counterclaim for $450, alleging overcharge and treble damages, and $250 for counsel fees. The petitioner has filed a “Reply to Counterclaim” and the respondent has filed a “sur-reply”.
Both parties appear to want the court to decide the question on the basis submitted and the court, under the rules of liberalized pleading, will consider that each side has mude a motion for a summary judgment.
The petition of the landlord has two defects. There is a failure to allege the reason for the arrears of $30 and, more significantly, there is a failure to allege ultimate facts showing compliance with the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4). For the latter reason the petition is dismissed. (See Westchester Towers Co. v Fishbein, Yonkers City Ct, July 3, 1975, Cacace, J.; Giannini v Stuart, 6 AD2d 418; Lincoln Plaza Assoc v Barbarisi, 60 Misc 2d 100.)
The respondent herein has counterclaimed for alleged overcharges in the amount of $450 and legal fees as a result of those overcharges in the amount of $250. This court has no jurisdiction, in the first instance, to hear and determine in regard to rent overcharges, alleged to have been sustained under the Emergency Tenant Protection Act of 1974.
A review of the legislation reveals that the Legislature intended to vest, in the State Division of Housing and Community Renewal, the sole responsibility to determine the facts in regard to overcharges. Section 12 of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4) reads in pertinent part as follows:
“(1) Subject to the conditions and limitations of this paragraph, any owner of housing accomodations * * * who, upon complaint of a tenant, or of the state division of housing and community renewal is found by the state division of housing and community renewal, after a reasonable opportunity to be *723 heard, to have collected any rent * * * in excess of the rent authorized for such housing accomodations by or pursuant to this act shall be liable to the tenant for a penalty equal to three times the amount of such excess * * * the state division of housing and community renewal shall establish the penalty * * *
"(a) The order of the state division of housing and community renewal shall apportion the owner’s liability * * *
"(b) A complaint under this subdivision must be filed with the state division of housing and community renewal * * *
"(e) The order of the state division of housing and community renewal * * * may, * * * be filed and enforced by a tenant in the same manner as a judgment.”
A comparison of the enabling legislation in regard to other rent control laws passed by the State Legislature re-enforces this view. Subdivision 5 of section 11 of the Emergency Housing Rent Control Law (L 1946, ch 274, as amd by L 1966, ch 706, § 1) which is the enforcement division of the act controlling rents for housing constructed prior to February 1, 1947, outside the City of New York, reads: "If any landlord who receives rent from a tenant violates a regulation or order prescribing the maximum rent with respect to the housing accomodations for which rent is received from such tenant, the tenant paying such rent, may within two years of the date of the occurrence of the violation * * * bring an action against the landlord on account of the overcharge as hereinafter defined”.
The language of the Legislature is substantially similar in the enforcement section of the act controlling rents in the City of New York (Local Emergency Housing Rent Control Act, § 10, subd [e]; L 1962, ch 21, § 1).
The reason for the distinction made by the Legislature is apparent. In the acts controlling rents in the City of New York and buildings constructed prior to February 1, 1975 outside the City of New York, the administrative agency superceded and adopted the records and frozen rents which had previously been the responsibility of the Federal Government and, except for well-defined limits, the rents could not be increased by unilateral agreement between the landlord and the tenant.
In the Emergency Tenant Protection Act of 1974, however, the sole method of increasing rents, except for certain peculiar *724 circumstances (Emergency Tenant Protection Act of 1974, § 9; § 6, subd d; L 1974, ch 576, § 4), is to be the rate of increase adopted by the various guildeline boards, mandated under the authority of the act. The act envisions periodic, across the board increases which will apply to all landlords and tenants, rather than an individual administrative determination as to a particular landlord-tenant.
If the Emergency Tenant Protection Act of 1974 is not interpreted in this way the courts would become involved in the questions as to what the legal regulated rent was and other determinations which are properly to be made by the administrative agency. (Golenpaul v Frankel, 17 Misc 2d 311, affd 285 App Div 941; Fireman v Newcraft Assoc., 200 Misc 894.)
Accordingly, both the petition and the counterclaim are dismissed.