Robert. W. Cacace, J.
This is a dispossess proceeding based upon nonpayment of rent. Trial, without a jury, was held on September 2, 1975. As a result of that trial the court makes the following findings of fact: The parties had a lease agreement which expired on October 31, 1974, calling for a monthly rental of $225. The tenant owes to the landlord the sum of $127.68 as a result of the tax escalation clause in the lease. The landlord offered to the tenant an option to accept a one-, two-, or three-year lease at the rate of increased rental promulgated by the Rent Guidelines Board of Westchester County on February 1, 1975. This offer was made on February 10, 1975. The initial legal regulated rent for the premises in question is the sum of $233.81 per month. The parties did not sign a lease subsequent to the offer of the landlord dated February 10, 1975. The premises are controlled by virtue of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576).
The tenant, at the conclusion of the landlord’s case, moved to dismiss on three grounds. He averred that the notice of optional lease terms, although given to him on February 10, 1975, was not given on forms prescribed by the Division of Housing and Community Renewal; that the amount of the original rent upon which the increases were calculated was not the proper rent; and that the landlord is not entitled to an increase on the date of the issuance of the guidelines, to wit, February 1, 1975.
The initial legal rent must be determined by the Division of Housing and Community Renewal and will be binding on this court. (Matter of ARS Yonkers Corp. v Sims, 82 Misc 2d 721.)
As the landlord has submitted a copy of the notice of initial legal regulated rent filed with the Division of Housing and Community Renewal, without protest, establishing the initial legal regulated rent in the amount of $233.81 this is sufficient for the court to find that this figure is the rent upon which any permitted increase will be computed. (State Tenant Protection Regulations, § 21, subd 2; § 41; 9 NYCRR 2501.1 [b]; 2503.1.)
The City of Yonkers declared a state of emergency on June *412 28, 1974, which declaration, by virtue of section 6 of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4) froze the rental on the premises in question at $233.81 per month until such time as the Westchester County Guidelines Board permitted an increase. On February 1, 1975 the board authorized rent increases of 14% per annum for a one-year lease; 16% per annum for a two-year lease, and 19% per annum for a three-year lease.
The landlord, on February 10, 1975, gave to the tenant an option of accepting a one-, two-, or three-year lease, as permitted by the guidelines, but this option was given on personal stationery, rather than on the form provided by the Office of Rent Administration (State Tenant Protection Regulations, § 45; 9 NYCRR 2503.5).
An examination of the pertinent section indicates that the form provided by the rent board would require that the tenant be given 30 days to accept or reject a new lease and that it be clearly spelled out that a new lease would be on the same terms and conditions as the expired lease, except for the increases in rent. It also provides that the notice be served by certified mail. While this court will not allow the ultimate triumph of form over substance and mandate that the forms of the rent board must be used, where, as here, the tenant’s obligations and prerogatives are not clearly set forth, the substance of the notice given must be examined. The notice in question does not inform the tenant that he had a 30-day period within which to decide as to whether or not he would accept the lease and further does not inform the tenant that all the other terms of the pre-existing lease would remain the same. The notice was sent on February 10, 1975 requiring the new lease to be effective on March 1, 1975 only 18 days later. In substance the notice does not comply with the regulations and is therefore, defective.
What is the effect of a defective notice under section 45 of the State Tenant Protection Regulations? The Legislature, by enacting the Emergency Tenant Protection Act of 1974, effectively froze rents in the affected areas and provided for an orderly and fair system of granting rent increases so as to minimize the deleterious effect of unusual economic conditions buffeting both landlords and tenants. They recognized however, the superior position of the landlord in the continuing conflict between landlord and tenant. In section 2 of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4) *413 there is the following language: "That preventive action by the legislature continues to be imperative in order to prevent exaction of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practises tending to produce threats to the public health, safety and general welfare”. With this in mind the court finds that a landlord must substantially comply with the rules and regulations of the Office of Rent Administration and that a lack of compliance will forestall any increase in the legal regulated rent, even where, as in this case, the tenant has indicated a willingness to execute a lease in an amount provided by the guidelines.
The rent for the apartment in question remained at the initial regulated rent of $233.81 per month until such time as the landlord complies with the regulations allowing him to receive the guidelines increase, and the portion of the petition which seeks a dispossess for the failure to pay the guidelines increase from February 1, 1975 until June, 1975 is dismissed.
As the court has previously found that the sum of $127.68 was due and owing by virtue of a tax escalation clause in the prior lease, judgment shall be entered against the tenant in that amount and possession is granted. In addition, the landlord is awarded counsel fees in the amount of $100.