Burton S. Sherman, J.
In this small claims action, the plaintiff seeks to recover tuition payments from defendant Hunter College of the City of New York made in or about February, 1975 for her two daughters. Tuition charges were based upon a finding by the admissions office and registrar that the daughters, while qualified students, were not resi *437 dents of the city and not eligible for free tuition. Plaintiff claims that her daughters were in fact residents and should have been admitted without charge. Hunter moved at the beginning of the trial to dismiss for lack of jurisdiction, urging that plaintiffs sole remedy is an article 78 proceeding and not an action at law. The Small Claims Court does not have mandamus power and hence no jurisdiction to entertain a proceeding under CPLR article 78.
Article 125 of the Education Law establishes a Board of Higher Education for the City of New York, and Hunter College is designated as a senior university thereunder. The board is empowered to "prescribe conditions of student admission * * * and shall have the power to determine in its discretion whether tuition shall be charged and to regulate tuition charges * * * and other fees and charges”. (Education Law, § 6202, subd 5, amd July 1, 1975 as § 6203, subd 5; emphasis added.) Under the by-laws of the board in effect in February, 1975, section 16.1 states that a qualified student may be admitted without tuition charge if "he/she is a bona fide resident of New York City.” A bona fide resident is defined as "one who is domiciled in New York City.” Nonresident students are admitted upon the payment of tuition. A memorandum issued by the office of the general counsel of the Board of Higher Education directed to registrars and admission officers dated January 22, 1971, advises that the college decision on residence is final but does provide informal administrative review procedures if necessary.
Based upon the foregoing, the court concludes that it lacks subject matter jurisdiction of the instant contract or quasi-contract action. For it cannot determine substantively the issue of residence of plaintiff and her two daughters. Subdivision 5 of section 6202 of the Education Law and the by-laws established thereunder require that the initial determination as to residence be made by the college administrators. Proof must be furnished to the admissions office by prospective students as to residence before they may enroll. The scope of judicial review of an administrative determination in these circumstances is limited to a finding of whether there was a reasonable exercise of discretion. (See cases cited 1 NY Jur, Administrative Law, § 176, p 585 et seq.; CPLR 7803.) In the interests of furthering orderly administrative action it is not the duty of the courts to "second-guess the wisdom of what an administrative agency has done” (Matter of Procaccino v *438 Stewart, 32 AD2d 486, 489). This is particularly true in the area of education. "Courts may not interfere with the administrative discretion exercised by agencies which are vested with the administration and control of educational institutions * * *. If the Board of Higher Education performs its discretion fairly and not arbitrarily, the court may not substitute its judgment for that of the board” (Matter of Lesser v Board of Educ., 18 AD2d 388, 390). The initial interpretation and construction of administrative by-laws or regulations is for the agency involved not the court. (Golenpaul v Frankel, 17 Misc 2d 311, affd 285 App Div 941.) The question of residence is for the board. (Matter of Board of Educ. v Allen, 29 AD2d 24.)
This finding of lack of jurisdiction gives little comfort to the plaintiff. The Small Claims Court was designed to provide a simple, informal and inexpensive procedure for the prompt determination of such claims. (CCA, § 1803.) This is precisely the reason why plaintiff sought relief here. She now finds herself out of court without having a judicial determination of her claim. (Cf. Society of N.Y. Hosp. v Blake, 73 Misc 2d 305, 308.)
Moreover, the court believes that the claim has merit. The plaintiff and her daughters Robin and Cindy resided in New York City for at least 15 years before they left for California in March, 1973. During that time, they always attended the public schools of this city. Indeed, before the move to California, Robin was a student at Hunter. The move was made at the insistence of plaintiff’s husband who believed he had a good business opportunity in California. However, a year after the move the plaintiff and her husband were divorced and he left that State. The plaintiff, a registered nurse, thereafter sought to transfer her employment from the Veterans’ Hospital in California to one in New York City. Her transfer was not to become effective until March 1, 1975. Meanwhile plaintiff’s daughters while still in California had applied for readmission to Hunter and were accepted. Since the new term started on February 1, 1975, Cindy and Robin returned to New York in early January, 1975 and lived in a transient hotel so they could begin their studies and await the arrival of their mother. She arrived shortly afterwards and has lived here with her daughters ever since.
The by-laws in effect at the time of the return of the parties to New York provided free tuition if a qualified student was "a bona fide resident of New York City.” A bona fide resident *439 was defined in the by-laws as one who is "domiciled in New York.” Residence is a place of abode. A domicile is one’s permanent home. Domicile requires physical presence and intent, intent that the place where one lives is a permanent home where one will return. A person may have many residences but only one domicile. (Matter of Bennett, 135 Misc 486; Matter of Green, 99 Misc 582, affd 179 App Div 890; People v Renda, 64 Misc 2d 445.) In this case all of the evidence indicates that on February 1, 1975, New York City was the domicile of these students. No other inferences can be drawn and a finding to the contrary was an abuse of administrative discretion. There was physical presence. There was no other place they could call home. They had left California permanently. They had lived here all of their lives except for a short period of time when they were uprooted and taken to California. As to intent, Robin stated in her letter to the registrar in May, 1975.
"It just seems so incomprehensible to me that we should be fighting to prove we live in New York and that somebody thinks that we do not deserve to get back the money we had to pay for being in another state — through no fault or wish on our part. I have always thought of us as New Yorkers and nothing else. As far as I’m concerned, I never plan to leave New York again because all my friends and interests are here and from living in other parts of the country, I know that New York is the only place I could exist.” Both Cindy and Robin were attending public universities in California. The move to New York was not for the purpose of obtaining a tuition free education. While it has been held that there is a presumption that a student is a transient, it is a rebuttable presumption in order to establish residency. (Matter of Hoffman v Bachman, 187 Misc 799, 804; Ann 56 ALR3d 641.) Finally, the by-laws have recently been amended to require one-year physical presence in the city to qualify for free tuition. This change is an admission that under the existing by-laws in February, 1975 both Cindy and Robin should have been found and indeed were domiciled and were bona fide residents of New York City and qualified for free tuition.
The court can only suggest that a copy of this opinion be forwarded to the Board of Higher Education in the hope that it will be persuaded to return the tuition.
This case again illustrates the procedural chaos often caused by our fragmented court system (Garfinkle v Kaplan, *440 77 Misc 2d 1097; Mantilla v Aras, 82 Misc 2d 458; Bankers Security Life Ins. Soc. v Hayden, 84 Misc 2d 593). It can frustrate and impede the very reason for a litigant coming to court, namely to have an adjudication of his or her dispute. Aside from easing the burden of litigation, a unified court system is most important if the public is to continue to have faith in the judicial process. This view is shared by the American Bar Association. (See report of the ABA Commission on Standards of Judicial Administration, Standards Relating to Court Organization, 1974, § 1.11 [b].) It urges the States to adopt expeditiously unified court systems. In any event, since this court lacks jurisdiction, it is directed that, pursuant to the New York State Constitution (art VI, § 19, subd f), the Corporation Counsel transfer this action to the Supreme Court, New York County, for further proceedings if that court is so advised (CPLR 103, subd [c]), by presentation to the clerk of said court a copy of this order within 15 days of its entry.